GUERRERO v SCHOOLMEESTER

Docket No. 73435. Submitted May 1, 1984, at Grand Rapids.—Decided June 28, 1984. Leave to appeal applied for.

Margareta Guerrero was injured in an automobile accident in which the other car was driven by Robert W. Schoolmeester. Two years and three months later, she was involved in another accident involving a car driven by James E. Groendyke and owned by Larry A. and Jacob E. Huffman. Guerrero brought an action against all four of those parties, alleging that she was injured in each instance in the neck and back and that she suffered a serious impairment of a body function. The claim against Schoolmeester was settled, and the Kent Circuit Court, George R. Cook, J., granted summary judgment in favor of the other defendants, holding that plaintiff, as a matter of law, did not suffer a serious impairment of a body function. Plaintiff appealed from the judgment. *Held:*

1. A trial court may, in certain instances, rule on the threshold issue of serious impairment of a body function. This case, in which there was no objective manifestation of plaintiff's alleged injuries, was such a case. The injuries complained of did not interfere in any significant manner with plaintiff's life style nor prevent her from obtaining gainful employment. The trial court did not err in ruling that plaintiff's injuries did not meet the threshold requirement for imposing tort liability and in granting summary judgment for defendants.

2. Summary judgment in favor of plaintiff was properly denied as there was a genuine question of fact as to which accident was responsible for plaintiff's injuries.

Affirmed.

1. Insurance — No-Fault Insurance — Serious Impairment of Body Function.

A trial court, in certain instances, may rule on the threshold issue of whether an injury is a serious impairment of a body

References for Points in Headnotes

[1, 2] 7 Am Jur 2d, Automobile Insurance §§ 25, 349, 358.

Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.

function for purposes of tort liability for noneconomic losses arising out of an automobile accident as a matter of law, rather than referring that question to the trier of fact; to meet the threshold an injury need not be permanent, however pain and suffering is not recoverable per se, but only when it arises out of an injury which affects the functioning of the body.

2. INSURANCE — NO-FAULT INSURANCE — SERIOUS IMPAIRMENT OF BODY FUNCTION — SOFT-TISSUE INJURIES.

Soft-tissue injuries which do not interfere in any significant manner with a plaintiff's normal life style do not reach the threshold of serious impairment of a body function necessary to a finding of tort liability under the automobile no-fault insurance statute (MCL 500.3135; MSA 24.13135).

*Williams, Klukowski, Drew & Fotieo, P.C.* (by *Themis J. Fotieo),* for plaintiff.

*Tolley, Fisher & Verwys, P.C.* (by *Mark H. Verwys* and *Sharon R. Brinks),* for defendants Groendyke and Huffman.

Before: BEASLEY, P.J., and ALLEN and M. B. BREIGHNER,* JJ.

ALLEN, J. Once again we are asked to determine whether a soft-tissue injury with either no or, at most, minimal medical manifestation constitutes "serious impairment of body function" under § 3135 of the no-fault insurance act. (MCL 500.3135; MSA 24.13135). The case comes to us on the following facts.

On November 24, 1979, the car in which plaintiff was riding as a passenger and which was being driven by plaintiff's husband was rear-ended by a vehicle driven by defendant, Robert W. Schoolmeester. On February 23, 1982, some two years and three months after the first accident, plaintiff was involved in a second accident, when the car in

---

* Circuit judge, sitting on the Court of Appeals by assignment.

which she was riding was hit in the rear. The vehicle in the second accident was driven by defendant James E. Groendyke and was owned by defendants Larry and Jacob Huffman. Plaintiff's complaint against Schoolmeester was filed October 20, 1981, but was settled prior to entry of summary judgment on August 19, 1983, in favor of defendants Groendyke and Larry and Jacob Huffman. Plaintiff appeals as of right from the entry of summary judgment. Schoolmeester is not a party to this appeal.

Plaintiff did not seek medical treatment immediately after the first accident; however, she did go to a hospital emergency room two days later, where she was treated and released, complaining of pain. Thereafter plaintiff began seeing Dr. John Charles Colwill, an orthopedic surgeon, with the first visit being December 6, 1979. Plaintiff also began seeing her family physician, Dr. John N. Campbell, at regular intervals beginning January 29, 1980.

After her second accident, plaintiff was taken to Blodgett Hospital, where she was treated and released. Plaintiff continued to see both Dr. Campbell and Dr. Colwill. Plaintiff testified at her deposition that she was injured in the second accident in the same areas of her back and neck as she was injured in her first accident, with an increase in the pain. She also testified that there are things she can no longer do after the second accident which she could do after the first accident. After the second accident she started to break dishes because of a weakness in her hand, and now her daughter must set the table. Further, she drives less after the second accident than she could after the first. She also testified that after the second accident she could no longer crochet, which she could do a little bit of after the first accident.

Dr. Campbell first saw plaintiff after the second accident on March 9, 1982. He testified at his deposition that during the examination he noted that she had normal strength in her upper extremities, which also had normal sensation, she had normal range of motion in her neck, and there was a mild to moderate tenderness in her neck but the neck was not swollen. Dr. Campbell compared his notes of the examination prior to the second accident with those of the examination after the second accident. He found that the only change in plaintiff's condition was that, prior to the second accident, she complained of mild pain and after the second accident she complained of mild to moderate pain. Dr. Campbell said that his notes do not reflect any change in body function after the second accident.

Dr. Campbell testified that plaintiff probably had a low threshold of pain and that her complaints of pain were not borne out by objective findings. Dr. Campbell's diagnosis and treatment remained the same after the second accident. Dr. Campbell reviewed a copy of an x-ray which was taken at Blodgett Hospital immediately after the second accident. Dr. Campbell testified that the x-ray did not disclose any fractures and that the spine, including the neck, was normal. This was not contrary to his diagnosis of neck strain and back strain, as they are soft-tissue damage not detectable on x-ray. Finally, Dr. Campbell testified that plaintiff's complaints, over time, were the same after the second accident as they were before the second accident.

Dr. Colwill first saw plaintiff after the second accident on March 10, 1982. Dr. Colwill found that plaintiff had a good range of movement in her neck, but with some tenderness. The tenderness

was a longstanding complaint. He testified that he did not notice much change from before the second accident to after the second accident, and that his diagnosis of a neck strain and sprain remained the same. He testified that there were no objective findings of any additional problems after the second accident and he could find no "hard objective evidence" of plaintiff's physiologic problems.

The file contains a deposition of Dr. Thomas Allen. Dr. Allen diagnosed plaintiff as having "a loss of the normal cervical lordosis".[1] He testified that loss of lordosis is often associated with an irritation of the neck, such as a muscle spasm. He also noted that an x-ray disclosed "a suggestion of an evulsion fracture of the spinous process of the first thoracic vertebrae", but could not determine exactly when the fracture occurred. The fracture was not tender and, therefore, in his opinion, was a more remote problem than the loss of lordosis. He also testified that plaintiff *may* have had a carpal tunnel syndrome, but that it was unlikely it would have been caused by the accident. Plaintiff had a normal range of motion of her neck during the examination. Dr. Allen found no muscle spasms, but he may have missed them due to plaintiff's weight.

Dr. Campbell's deposition was the only one available to the court at the time of the hearing. However, plaintiff's counsel did bring the existence of the other depositions to the attention of the trial court, and at some length advised the trial court of Dr. Allen's findings as testified to in his deposition. Thus, for purposes of this appeal, the findings of Dr. Allen and Dr. Colwill, as stated in their depositions, are considered part of the record on appeal. Given the facts as they appear in the

---

[1] Normal cervical lordosis is the natural curvature of the neck.

several depositions, the single question before us is whether, *as a matter of law,* plaintiff did not sustain "serious impairment of body function".

In *Cassidy v McGovern,* 415 Mich 483; 330 NW2d 22 (1982), the Supreme Court ruled that, *in certain instances,* the trial court might rule on the threshold issue of serious impairment of a bodily function as a matter of law, rather than referring that question to the trier of fact.[2] In so ruling, the Supreme Court recognized that defining what would constitute those *"certain instances"* was not susceptible of a simple definition but would have to be developed on a case-by-case basis. *Id.,* p 503.

However, the Court did set forth some guidelines for determining whether an injury met the threshold. The Court noted that pain and suffering is not recoverable per se, but only when it arises out of an injury which affects the functioning of the body. It also noted that an injury need not be permanent in order to be serious under the *Cassidy* standard. In looking at the facts of the cases before the Court in *Cassidy,* the Court found that bumps and bruises, as well as back and neck pain, which presented no problem after two months, did not constitute a serious impairment of body function under the *Cassidy* standard. It did find that a broken leg, since it impairs walking, is a serious impairment of body function under the *Cassidy* standard.

Three recent decisions of this Court have expanded upon the *Cassidy* guidelines. *McDonald v Oberlin,* 127 Mich App 73; 338 NW2d 725 (1983);

[2] Prior to *Cassidy,* the prevailing rule was that whether an injury constituted "serious impairment of body function" was a question of fact to be decided by the trier of fact, except in those infrequent instances where the trier of fact could not reasonably differ as to whether the injuries were so severe or so minimal that the Court itself could rule on the question as a matter of law. *Abraham v Jackson,* 102 Mich App 567, 570; 302 NW2d 235 (1980).

*Williams v Payne,* 131 Mich App 403; 346 NW2d 564 (1984); *Braden v Lee,* 133 Mich App 215; 348 NW2d 63 (1984). In *McDonald,* plaintiff had been off work for a three-month period of time, was not confined to bed, was not incapacitated by her pain and discomfort, and was able to engage in normal activities which did not interfere with her normal life style. On appeal, we found no serious impairment of bodily function.

In *Williams,* plaintiff, Hattie Williams, sustained an injury to the base of her right thumb. The thumb was not fractured nor were there other medical abnormalities. She experienced pain, diagnosed as either a sprained ligament or as tendonitis. It was difficult for her to perform household tasks, but there were no specific chores she was unable to do. As in the instant case, her injuries were soft-tissue injuries and not subject to medical measurement. This Court found that while her injuries had an objective manifestation in the form of pain, the Court read *Cassidy* as requiring that the injuries, and not the pain, be medically substantiated through objective manifestation. Therefore, while Hattie Williams' pain was manifested, her injuries were not objectively manifested under the *Cassidy* standard. Thus, pain which is not substantiated medically does not meet the threshold requirement for serious impairment of body function. In short, "pain and suffering is not sufficient to meet the threshold".[3]

---

[3] "Additionally, Mrs. Williams' soft-tissue injuries were not subject to medical measurement. Thus, they are not 'objectively manifested' in a scientific or medical context. The symptoms of her injuries, however, have found objective manifestation: pain makes certain activities difficult. The *Cassidy* opinion did not expressly designate which standard of manifestation to employ, objective medical measurements of injury or a patient's complaints of pain substantiated only by the patient's limited activities. We conclude that Mrs. Williams' injuries are not 'objectively manifested' within the meaning of *Cassidy.*" 131 Mich App 409-410.

Hattie's husband, Abraham, was also injured in the accident. Abraham complained of pain in his left shoulder, legs and back. The examining physician did not notice any medical abnormalities, with the exception of a slight limitation of movement in the shoulder. Another physician testified that Abraham experienced limited movement in the hips and neck. Finally, Abraham testified that he had to be transferred to another job because he had difficulty in lifting and grasping with his left hand. This Court held that, while Abraham's case for serious impairment of a body function was stronger than Hattie's, his injuries fell short of the *Cassidy* threshold. There was no objective manifestation of his injuries. The Court noted that while "his injuries no doubt impaired his ability to work, x-ray results were negative and no neurological disorder was found". 131 Mich App 411. Thus, this Court found that Abraham was left to his no-fault remedies for his noneconomic losses.

In *Braden,* plaintiff sustained injuries to his left hand and to his back, ligaments and other soft tissues. One month after the accident he began to experience numbness in his right hand. He returned to work four months after the accident against the advice of his personal physician and was treated for injuries to the left hand and accompanying pain. Following his return to work, he worked steadily but complained of pain in the left hand with morning swelling. He complained that he could not do certain household chores, such as raking leaves and sweeping, without pain. His own medical witness stated that he could not reach a definite diagnosis of rheumatoid arthritis but it was a possible diagnosis. Defendant's medical witness testified that he did not believe plaintiff was disabled and examination revealed no

abnormality in plaintiff's hands. The trial court granted summary judgment to defendant. On appeal, we affirmed saying:

"Plaintiff was not incapacitated by his injuries nor did they interfere *in any significant manner* with his normal life style. Although plaintiff indicated that he continues to experience pain due to his injuries, recovery for noneconomic losses is not predicated upon serious pain and suffering but on objectively manifested injuries which affect the functioning of the body. *Cassidy, supra,* p 505. Plaintiff's injuries were not sufficiently serious to meet the minimum threshold level for recovery. Nor do we find that plaintiff's other injuries create a factual dispute which straddles the line demarcating those injuries which constitute serious impairment of body function and those which do not. Plaintiff's injuries did not prevent him from performing those tasks related to his employment nor did they interfere with his general ability to live a normal life." 133 Mich App 218-219. (Emphasis added.)

Based upon the guidelines set forth in the foregoing post-*Cassidy* cases, we conclude that plaintiff's injuries in the instant case do not meet the threshold required under the no-fault act. Plaintiff's attending physician, Dr. Campbell, testified at his deposition that there were no objective findings consistent with the pain that plaintiff complained of. Plaintiff's other attending physician, Dr. Colwill, also testified at deposition that there were no objective findings by him of plaintiff's injuries. Although a third physician, Dr. Allen, discovered a loss of the normal cervical lordosis, he testified that there were no objective findings of the cause of the loss of lordosis, with several potential factors. Further, Dr. Allen related plaintiff's weakness in the arm and hand to an elbow injury which plaintiff had sustained prior to the first

automobile accident and believed it was unlikely that either automobile accident caused plaintiff's hand difficulties. It should also be noted that Dr. Allen found that plaintiff's neck injury did not prevent a normal range of motion.

Plaintiff argues that the loss of cervical lordosis, testified to in Dr. Allen's deposition and since confirmed by an x-ray, meets the "medical manifestation" requirement imposed by *Williams, supra*. Further, plaintiff contends that, unlike the situation in *Williams*, plaintiff's life style in the instant case was substantially affected. We disagree on both grounds. Dr. Allen's testimony regarding "medical manifestation" was so qualified and tentative that we find it insufficient for the purposes for which it was offered. As noted earlier, Dr. Allen found no objective findings of the cause of the lordosis. Further, he examined plaintiff only once; Dr. Campbell examined plaintiff over an extended period of time.

While there is testimony that plaintiff experienced difficulties in her daily life, *i.e.,* dropping plates, inability to crochet, and difficulty in driving, we do not find that such difficulties interfered "in any significant manner" with plaintiff's normal life style, as required under this Court's opinion in *Braden*. Further, nothing in the record suggests that plaintiff is unable to engage in gainful employment in an area which does not require lifting over the weight restrictions imposed by Dr. Campbell. Accordingly, we conclude that the trial court did not err in granting summary judgment for defendants.

Finally, we disagree that summary judgment should have been granted in favor of plaintiff. In addition to the reasons heretofore set forth for denying relief to plaintiff, the depositions of plain-

tiff's own physicians create great doubt as to whether her injuries were caused by the first accident or the second accident. We believe that there does exist a genuine issue of material fact as to which accident is responsible for plaintiff's injuries, thus precluding summary judgment in favor of plaintiff. GCR 1963, 117.2(3).

Affirmed. Costs to defendants.