WOLKOW v EUBANK

Docket No. 74313. Submitted May 7, 1984, at Grand Rapids.—Decided November 7, 1984.

Plaintiff, Claire Wolkow, was involved in an automobile accident on March 16, 1981, with defendant Ellen J. Eubank and suffered a fractured left second rib and left clavicle. The broken rib healed without treatment while the clavicle healed over time with a minimal amount of restriction on plaintiff's use of her arm. Plaintiff was hospitalized for two days and was able to use both arms upon going home, restricted only by her tolerance for pain and a soft plastic clavicle strap. Within weeks, plaintiff's range of motion had increased considerably and she was able to perform normal household and personal tasks. Plaintiff was instructed by her doctor not to work at least till the end of June, 1981, and cautioned against driving her car for fear that pain would impede her ability to react swiftly in an emergency. Plaintiff thereafter brought an action under the no-fault insurance act in the Kent Circuit Court against defendants, Ellen J. Eubank and Curtis Eubank, seeking damages for the injuries sustained. The trial court, George R. Cook, J., ruled as a matter of law that plaintiff had failed to allege a serious impairment of a body function and granted defendants' motion for a summary judgment. Plaintiff appeals from that order. *Held:*

1. There was no factual dispute regarding the nature and extent of the plaintiff's injuries. Therefore, the trial court was correct in deciding as a matter of law whether or not the plaintiff had suffered a serious impairment of a body function.

2. The facts of this case support the trial court's decision regarding the failure to allege an objectively manifested serious impairment of an important body function.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 7 Am Jur 2d, Automobile Insurance § 349.
What constitutes sufficiently serious personal injury, disability, impairment, or the like to justify recovery of damages outside no-fault automobile insurance coverage. 33 ALR4th 767.

1. Insurance — No-Fault Act — Tort Liability — Serious Impairment of Body Function.

Whether an injury is a "serious impairment of a body function" under the no-fault act so as to give rise to tort liability for noneconomic loss is a question to be decided by the trial court as a matter of law where there is no factual dispute regarding the nature and extent of a plaintiff's injuries (MCL 500.3135[1]; MSA 24.13135[1]).

2. Insurance — No-Fault Act — Tort Liability — Serious Impairment of Body Dunction.

The determination of whether a plaintiff's injuries are a serious impairment of a body function under the no-fault act so as to give rise to tort liability for noneconomic loss must be made on a case-by-case basis; relevant guidelines to aid a trial court in such a determination are (1) that "impairment of body function" must be interpreted as "impairment of important body function", (2) impairment must be "serious", and (3) the injuries must be "objectively manifested injuries" (MCL 500.3135[1]; MSA 24.13135[1]).

*Napieralski, Walsh & Velzen, P.C.* (by *Peter P. Walsh),* for plaintiff.

*Nelson & Kreuger, P.C.* (by *Steven L. Kreuger),* for defendants.

Before: D. E. Holbrook, Jr., P.J., and R. M. Maher and C. J. Hoehn,* JJ.

Per Curiam. Plaintiff appeals as of right from the trial court's order granting defendant's motion for a summary judgment pursuant to GCR 1963, 117.2(3).

Plaintiff was involved in an automobile accident with defendant Ellen J. Eubank on March 16, 1981. As a result of the collision, she suffered a fractured left second rib and a fractured left clavicle. Plaintiff was hospitalized for approximately two days for examination and observation while

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

being treated with pain medication. While in the hospital she was fitted with a clavicle strap or brace (a soft padded splint), which limited her ability to move her arm "somewhat", but was not uncomfortable to wear. Plaintiff was also fitted with a sling to support the weight of her left arm. During her brief stay in the hospital, plaintiff was given oral pain medication for fairly severe pain. No treatment was prescribed for the broken rib and this fracture healed without treatment and without any significant residual effects.

Plaintiff continued to wear the clavicle strap for 3-1/2 months. During this period, she found the strap to be "very distressful" because it interfered with her sleep and because she was unable to move her left hand at all. She was, however, able to move her arm in front of her body. The sling was removed after three weeks. Once both the strap and sling had been removed, plaintiff still felt pain and could not raise her left arm over her head or straight out from her shoulder. She was able to do some household tasks but was unable to drive until August, 1981, because the pain was too strong. She also found dressing and showering very painful, although she was able to do these things.

During this period plaintiff was treated by Dr. Thomas Schwaderer. He deposed that he instructed plaintiff not to work until at least the end of June, 1981, and cautioned her not to drive because he feared that the pain she was experiencing would impede her ability to control the car in an emergency. By the end of June, 1981, he found that plaintiff was still without approximately 40% of her normal range of motion in her shoulder and believed that she had developed adhesive capsulitis in her shoulder from lack of use. Dr. Schwaderer therefore instructed plaintiff to remove the clavi-

cle strap and to begin working her arm and shoulder to increase her range of motion.

By July 22, 1981, Dr. Schwaderer found that plaintiff's shoulder fracture had healed almost entirely and placed her in physical therapy to treat the adhesive capsulitis. The therapy lasted until the end of October, 1981, when plaintiff had recovered nearly her full range of motion, although she still experienced some discomfort at the extremes of this range. In Dr. Schwaderer's opinion, plaintiff's injury was not an excruciatingly uncomfortable one and he felt that she had made an excellent recovery from the injury. Even before beginning the physical therapy, he felt that plaintiff could have been exercising by herself up to her ability to tolerate the pain.

Plaintiff was also examined by Dr. Harvey M. Andre on November 3, 1981. He found that plaintiff's shoulder had healed very well without any muscular atrophy or spasm. Plaintiff had almost a full range of motion in her shoulder and normal range of motion in her neck. She was able to bend her left elbow normally, had normal reflexes, and was able to do all her normal daily activities except at certain extremes of movement such as overhead work.

On the basis of this evidence, the trial court ruled as a matter of law that plaintiff had failed to allege a serious impairment of a body function and granted defendants' motion for summary judgment. Although this is a close question, we agree with the trial court and therefore affirm its judgment.

Pursuant to the Supreme Court's decision in *Cassidy v McGovern,* 415 Mich 483; 330 NW2d 22 (1982), a trial court is to decide as a matter of law whether or not a plaintiff has suffered "serious impairment of a body function" where there is no

factual dispute regarding the nature and extent of a plaintiff's injuries. This was the case here. The Supreme Court's decision also provides some guidelines to the trail court in making this determination in an individual case, although ultimately the decision must be made on a case-by-case basis. *Cassidy v McGovern,* 415 Mich 503. Among the relevant guidelines are the following: (1) "impairment of body function" must be interpreted as "impairment of important body function"; (2) any impairment must be "serious"; and (3) only "objectively manifested injuries" are covered by MCL 500.3135(1); MSA 24.13135(1).

As further guidance, the Supreme Court applied these standards to the facts of the two cases before it in *Cassidy v McGovern.* In *Hermann v Haney,* the Supreme Court concluded that the plaintiff had not suffered a serious impairment of an important body function. The injuries suffered were only a bump on the head and bruises on the knees. The bruises cleared up in two months and the bump on the head in one month. The plaintiff missed one month of work due to pain, but had no problems from the injuries after two months. In *Cassidy,* however, the Supreme Court found that the plaintiff had, in fact, suffered a serious impairment of an important body function. The Court noted that two bones in the plaintiff's right leg were completely broken and that he had required 18 days of hospitalization and 7 months of wearing casts which at least partially immobilized his leg. During this time the plaintiff was further immobilized by dizzy spells which forced him to surrender crutches for a walker. The Supreme Court found that this significant impediment to the plaintiff's ability to walk constituted the serious impairment of an important body function.

The facts of this case fall squarely between the

two factual scenarios contained in the *Cassidy* opinion. Plaintiff in this case suffered two broken bones, but one healed without treatment while the other healed over time with a minimal amount of restriction on plaintiff's use of her arm. Although plaintiff was hospitalized after the accident, she was able to go home within two days and was able to use both arms, restricted only by her tolerance of pain and the soft plastic clavicle strap. Within weeks, plaintiff's range of motion had increased considerably and she was able to perform normal household and personal tasks. The most significant restriction on her normal activities was Dr. Schwaderer's admonition not to work or drive; however, as stated by Dr. Schwaderer, the restriction on driving was imposed not because plaintiff was physically incapable of driving but rather for fear that pain would impede her ability to react swiftly in an emergency.[1] Finally, we note that although plaintiff asserts that she still suffers headaches and neckaches from the accident, Dr. Schwaderer was unable to say that this pain was related to the accident. In light of the Supreme Court's decision in *Cassidy,* we affirm the trial court.

Affirmed.

---

[1] The record does not establish why Dr. Schwaderer advised plaintiff not to work. We are therefore unable to determine whether this advice was based on the disabling nature of the injury or, for example, on the need for plaintiff to rest or take medication.