SALIM v SHEPLER

Docket No. 79891. Submitted March 20, 1985, at Detroit.—Decided April 16, 1985.

Afaf Salim was injured in an automobile accident and filed suit in Wayne Circuit Court alleging serious impairment of body function against Steven S. Shepler, the driver, and his wife, Jane C. Shepler, the owner of the other vehicle involved in the accident. Defendants moved for summary judgment on the ground that plaintiff's injuries did not meet the statutory threshold for recovery of noneconomic losses. The court, Thomas Roumell, J., granted summary judgment in favor of defendants. Plaintiff appeals. *Held:*

Plaintiff failed to provide evidence that her impairment, an alleged limitation of range of motion in her neck and shoulders, was serious.

Affirmed.

1. INSURANCE — NO-FAULT INSURANCE — SERIOUS IMPAIRMENT OF BODY FUNCTION — QUESTION OF LAW.

A court has the responsibility, if there is no material factual dispute as to the nature and extent of a plaintiff's injuries, to decide as a matter of law the threshold question of serious impairment of body function where that issue is raised in an action for recovery of noneconomic losses under the no-fault act (MCL 500.3135; MSA 24.13135).

2. INSURANCE — NO-FAULT INSURANCE — SERIOUS IMPAIRMENT OF BODY FUNCTION — OBJECTIVE MANIFESTATION — PAIN AND SUFFERING.

Serious pain and suffering does not meet the threshold requirement of serious impairment of body function necessary for recovery of noneconomic losses under the no-fault act; rather, objective manifestation of the injury is required and the impaired body function must be an important one affecting the

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 7 Am Jur 2d, Automobile Insurance §§ 348, 349, 358.

What constitutes sufficiently serious personal injury, disability, impairment, or the like to justify recovery of damages outside of no-fault automobile insurance coverage. 33 ALR4th 767.

person's ability to live a normal life (MCL 500.3135; MSA 24.13135).

3. INSURANCE — NO-FAULT INSURANCE — SERIOUS IMPAIRMENT OF BODY FUNCTION.

A doctor's advice that a plaintiff avoid activities involving excessive or repetitive reaching and pulling and causing undue strain to the cervical region is insufficient to create a question of fact whether the plaintiff has a serious impairment of a body function under the no-fault statute.

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Gregory M. Janks*), for plaintiffs.

*Zweig & Harkness, P.C.* (by *Warren M. Heiter*), for defendants.

Before: WAHLS, P.J., and BRONSON and T. C. MEGARGLE,* JJ.

PER CURIAM. Plaintiff was injured in an auto accident on September 4, 1981. She commenced an action on March 21, 1983, alleging serious impairment of body function. Defendants moved for summary judgment, pursuant to GCR 1963, 117.2(3), on the basis that plaintiff's injuries, assumed for purposes of the motion to be as plaintiff claimed them, did not meet the statutory threshold for recovery of noneconomic losses, MCL 500.3135; MSA 24.13135. The motion was granted and plaintiff appeals as of right. We affirm.

While plaintiff was driving her car on September 4, 1981, a wheel came off and plaintiff pulled to the side of the road. A man stopped and offered to call for assistance, so plaintiff remained in the car. A short while later, a van driven by defendant Steven Shepler and owned by his wife struck the rear end of plaintiff's vehicle. Plaintiff struck her

* Circuit judge, sitting on the Court of Appeals by assignment.

forehead and blacked out momentarily. When emergency medical assistance arrived, plaintiff declined to go to the hospital in an ambulance but, apparently, went later with a relative and walked in.

At the hospital, plaintiff complained of a headache and pain in the left side of her neck. She was diagnosed as having an acute contusion to her forehead and acute cervical strain. X-rays revealed no abnormalities.

On September 11, 1982, plaintiff was examined by Dr. Joseph Berke, M.D., Ph.D., and began a course of treatment including analgesic medication, moist heat at home and physical therapy. Dr. Berke diagnosed post traumatic cephalgia and cervical muscle strain. In a May, 1982, letter, he reported that neurologic examination continued to show limited range of motion, tenderness and muscle spasm. He felt that plaintiff could resume normal activity on January 11, 1982. In a letter written in June, 1984, Dr. Berke concluded that plaintiff had chronic cervical strain with persistent left shoulder pain, limited range of motion, spasticity and tenderness. He advised, "Activities which involve excessive or repetitive reaching and pulling as well as causing undue strain to the cervical region should be avoided".

Also on September 11, 1981, plaintiff saw Dr. D. L. Litzenberger, M.D. She complained of neck and shoulder problems. The doctor concluded that she had mild residuals of muscle strain but could do light work with her arms and could do regular work after one week. Plaintiff was an assembler at a Ford plant.

On October 20, 1981, Dr. S. M. Lele, M.D., examined plaintiff and concluded that she had normal function range, was fit for normal duties and did not require treatment. Further x-rays taken on

October 23, 1981, were negative. On November 9, 1981, plaintiff was examined by Dr. Paul Forman, D.O., who concluded that three to four weeks of physical therapy to the neck and shoulder should return plaintiff to her full rehabilitative potential. On December 7, 1981, Dr. Forman could make no objective findings and concluded that plaintiff was not medically disabled. On December 10, 1981, Dr. Claude Oster, D.O., examined plaintiff, found no abnormalities and concluded that malingering had to be considered.

Plaintiff apparently returned to work on December 23, 1981, and continued to work until a seniority layoff in early 1982. Subsequently, because of a baby and other responsibilities, she remained unemployed.

While continuing treatment with Dr. Berke, on August 11, 1982, plaintiff went to Dr. Ronald D. Yelen, D.C., and commenced a course of chiropractic treatment. She complained of pain and stiffness in the neck and upper back, headaches, increased nervousness and irritability, and on rare occasions, a temporary numbness in the fingers of her left hand. Dr. Yelen concluded that she had spinal subluxations, pain, tenderness and spasticity.

At her deposition, plaintiff stated that her continuing problem was a feeling of weight or pressure on her shoulders. Her headaches had been severe, she said, for three to four months after the accident, and, subsequently, she had suffered only from tension headaches.

Pursuant to *Cassidy v McGovern,* 415 Mich 483; 330 NW2d 22 (1982), the court has the responsibility, if there is no material factual dispute as to the nature and extent of a plaintiff's injuries, to decide the threshold question of serious impairment as a matter of law. Serious pain and suffering does not meet the threshold. Rather, objective manifesta-

tion of the injury is required and the impaired body function must be an important one affecting the person's ability to live a normal life.

On appeal, plaintiff addresses the injury to her neck and shoulders only; no assertion of error is made with respect to her headaches. Defendants note a question of causation as to the left shoulder injury because Ford records show that plaintiff complained of shoulder pain one month before the auto accident. However, for present purposes, we can assume that the accident was the cause of plaintiff's alleged injuries.

Plaintiff asserts that her injuries are objectively manifested by identifiable limitation of range of motion and by muscle spasms, citing *Argenta v Shahan,* 135 Mich App 477; 354 NW2d 796 (1984), *lv gtd* 421 Mich 858 (1985). Plaintiff perceives a split in this Court on the question of whether limitations of motion are objective manifestations of injury because in *Williams v Payne,* 131 Mich App 403; 346 NW2d 564 (1984), this Court recognized that the plaintiff had limited range of motion and yet concluded that the plaintiff's injury was not objectively manifested. We are not prepared to announce a split on this issue as *Argenta* and *Williams* may both have been correct on their specific facts. Whether an alleged limitation of motion constitutes objective manifestation of injury should be subject to critical analysis of the medical basis for the limitation. A limitation self-imposed because of real or perceived pain is not objective manifestation. Dr. Oster's report in this case gives a good example of the distinction we perceive:

"Range of motion of the lumbar spine revealed lumbar flexion to be limited to 5 degrees on a voluntary basis, however, there is no associated paraspinal spasm

of the lumbar area, and it is interesting to note, that both the McBride's test and the maintaining of the McBride's position demonstrates full lumbar flexion of 95 degrees without any evidence of pain or complaint on the part of this individual. This was performed when this individual was unaware that the lumbar flexion test was being performed."

In the instant case, the various doctors disagreed whether there was limitation of motion and whether there was objective manifestation of the injury. There is a question of fact which we may not decide in the context of a motion for summary judgment. However, the fact question is not material to a decision in this case.

Plaintiff has failed to provide evidence that impairment, if any, was serious. Assuming limited motion in the neck, plaintiff has not shown how it has affected her general ability to lead a normal life. She has not claimed that there are any normal activities she cannot perform. The fact that she did not work on the assembly line several months because of medical disability is not probative of her general inability to lead a normal life. The only evidence in plaintiff's favor on this issue is her doctor's advice to avoid activities involving excessive or repetitive reaching and pulling and causing undue strain to the cervical region. We conclude that such advice is insufficient to create a question of fact whether plaintiff has a serious impairment of a body function under the no-fault statute.

Affirmed.