FARQUHAR v OWENS

Docket No. 73148. Submitted March 13, 1985, at Lansing.—Decided
    February 18, 1986. Leave to appeal applied for.

Deborah A. Farquhar was injured when the automobile in which
    she was riding as a passenger collided with an automobile
    driven by Kimberly J. Owens. Farquhar sustained a broken
    arm which prevented her from returning to her home and job
    in Florida for a period of time, prevented her from taking care
    of herself for a period of time and caused her a good deal of
    pain. Deborah Farquhar and her husband, John P. Farquhar,
    brought a negligence action in Wasthenaw Circuit Court
    against Kimberly Owens, Eddie Owens and Josephine Owens,
    alleging that Deborah Farquhar had suffered a serious impair-
    ment of body function within the meaning of the automobile
    no-fault insurance act and that plaintiffs thus were entitled to
    bring an action for damages for their noneconomic losses.
    Following proofs on the nature and extent of Deborah Farqu-
    har's injuries and on damages, defendants' having admitted
    negligence, the trial court, William F. Ager, Jr., J., held that,
    because there was a dispute as to the duration and seriousness
    of Deborah Farquhar's impairment, there existed a jury ques-
    tion as to whether she had suffered a serious impairment of a
    body function within the meaning of the automobile no-fault
    insurance act. The jury specifically found that Deborah Farqu-
    har had not suffered a serious impairment of a body function.
    The trial court entered a judgment of no cause of action and
    subsequently denied Deborah Farquhar's motion for a judg-
    ment notwithstanding the verdict. Deborah Farquhar appealed.

V. J. Brennan, J., held:

1. The proofs failed to establish that Deborah Farquhar
    suffered a serious impairment of a body function within the
    meaning of the language of the automobile no-fault insurance
    act. Since there was no real dispute as to the nature of Deborah
    Farquhar's injuries, the trial court should have decided, as a

References
Am Jur 2d, Automobile Insurance §§ 348 et seq.
Validity and construction of "no-fault" automobile insurance plans.
    42 ALR3d 229.

matter of law, that there was no serious impairment of a body function, rather than submitting that question to the jury; however, since the jury reached the same decision as the trial court should have reached on its own, the court's error in submitting the question to the jury was harmless.

2. The trial court did not abuse its discretion by permitting the defense to question Deborah Farquhar as to her alleged drinking habits.

C. JOBES, J., concurred in the result only.

Affirmed.

SHEPHERD, P.J., dissented. He would hold that a serious impairment of a body function was shown. He would hold that the trial court erred in submitting the question of whether there was a serious impairment of a body function to the jury. He would reverse and remand for a trial as to damages only.

OPINION OF V.J. BRENNAN, J.

1. INSURANCE — NO-FAULT INSURANCE — SERIOUS IMPAIRMENT OF BODY FUNCTION.

The question of whether an injury is a serious impairment of body function under the no-fault act so as to give rise to tort liability for noneconomic loss must be decided as a matter of law by the trial court where there is no factual dispute regarding the nature and extent of the plaintiff's injuries; a dispute about the duration or seriousness of the impairment does not render the question one for the jury (MCL 500.3135; MSA 24.13135).

2. INSURANCE — NO-FAULT INSURANCE — SERIOUS IMPAIRMENT OF BODY FUNCTION — HARMLESS ERROR.

It is harmless error for a trial court to send to the jury the question of whether there is serious impairment of body function within the meaning of the no-fault act where, although the question was one for the court, the jury returned a verdict consistent with what the trial court should have found under the proofs presented.

DISSENT BY SHEPHERD, P.J.

3. INSURANCE — NO-FAULT INSURANCE — TORT LIABILITY — SERIOUS IMPAIRMENT OF BODY FUNCTION.

*Whether an injury is a serious impairment of body function under the no-fault act so as to give rise to tort liability for noneconomic loss is a question of statutory construction to be decided by the trial court; where there is no factual dispute regarding the nature and extent of a plaintiff's injuries or*

where a factual dispute is not material to the determination, the court must decide as a matter of law whether the plaintiff has suffered a serious impairment of body function (MCL 500.3135; MSA 24.13135).

4. Insurance — No-Fault Insurance — Serious Impairment of Body Function — Tort Liability.

A broken arm which causes the person to be unable to travel, to return to work, or care for himself for a period of time following the injury is a serious impairment of a body function within the meaning of the no-fault act, since an injury under those circumstances can be said to be objectively manifested, to impair an important body function and to have a severe detrimental effect upon the person's normal lifestyle; a severe temporary impairment will satisfy the statutory threshold requirement of a serious impairment of a body function which gives rise to tort liability for noneconomic loss under the no-fault act (MCL 500.3135; MSA 24.13135).

5. Insurance — No-Fault Insurance — Tort Liability — Serious Impairment of Body Function.

A person who is seriously impaired in body function may recover damages for pain and suffering and other sequelae of the injury after the impairment is no longer serious (MCL 500.3135; MSA 24.13135).

*Garris, Garris & Garris, P.C.* (by *Michael J. Garris*), for plaintiff.

*Stein & Moran* (by *Stephen B. Goethel*), for defendants.

Before: Shepherd, P.J., and V. J. Brennan and C. Jobes,* JJ.

V. J. Brennan, J. We hold that the proofs did not indicate a serious impairment of a body function and we affirm the trial court's entry of judgment of no cause of action and the denial of plaintiff Deborah Farquhar's motion for judgment notwithstanding the verdict.

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

In this case, the injury suffered by plaintiff Deborah Farquhar was a broken arm, and, from the reports, that was the only lingering injury. I would hardly classify that as a "catastrophic" injury.

In *Wolkow v Eubank,* 139 Mich App 1; 360 NW2d 320 (1984), the plaintiff received objectively manifested injuries, *i.e.,* broken bones. The fractures were of the left second rib and the left clavicle. The rib healed without treatment, though the clavical fracture required that plaintiff wear a clavicle strap for 3½ months. During this 3½ month period, the plaintiff complained that the strap was "very distressful" and interfered with her sleep. After the strap was removed, plaintiff was able to do some household tasks but was still unable to raise her left arm over her head or straight out from her shoulder. Dressing and showering were painful. However, after seven months, plaintiff was almost fully recovered. Plaintff was unable to drive for a five-month period. Plaintiff's doctor advised her not to work or drive for at least three months after the accident. At the time of appeal, plaintiff still asserted that she suffered from headaches and neckaches. This Court found no serious impairment of body function.

See also *Sherrell v Bugaski,* 140 Mich App 708, 711; 364 NW2d 684 (1984), where the Court found no serious impairment of a body function. There, the Court agreed that the plaintiff sustained a back injury that had objective manifestations, noting that the "x-rays show the absence of a normal spinal curvature and that the injury does impair important body functions. Plaintiff cannot sit for long periods and finds running or jogging painful." The Court could not find this "serious" within the meaning of the statute because the injury had not caused a significant impact on the plaintiff's abil-

ity to have a normal life. She could walk, drive, and work and her doctors had never restricted her social activities or work.

"When considering the seriousness of the injury, the court should be mindful of the other threshold requirements for recovery of noneconomic loss (*i.e.,* death and permanent serious disfigurement), and the legislative reasons for limiting the recovery for noneconomic losses, namely to prevent overcompensation for minor injuries and to reduce litigation in automobile accident cases." *Routley v Dault,* 140 Mich App 190, 193; 363 NW2d 450 (1984).

In my opinion, the trial court could have concluded as a matter of law that plaintiff did not suffer a serious impairment of an important body function. Although there was a dispute as to the duration and seriousness of the impairment, under *Cassidy v McGovern,* 415 Mich 483; 330 NW2d 22 (1982), I do not believe that this dispute was material to the determination of serious impairment and whether plaintiff's injury met the statutory threshold question. Although it was error for the court to send the question of serious impairment to the jury, the error here was harmless, because the jury reached the same conclusion as the court should have reached as a matter of law.

We do agree with Judge SHEPHERD as to his conclusion that the trial court did not abuse its discretion by allowing the cross-examination of plaintiff covering her alleged drinking problem; however, since retrial is not necessary here, we decline to comment on the manner in which a trial court must weigh the testimony under MRE 403. We also find that counsels' arguments, while irrelevant, do not mandate a new trial.

Affirmed.

C. JOBES, J., concurred in result only.

SHEPHERD, P.J. *(dissenting)*. Plaintiff Deborah
Farquhar alleged that she suffered a serious im-
pairment of a body function in an automobile
accident. MCL 500.3135(1); MSA 24.13135(1). De-
fendants admitted negligence. The trial was lim-
ited to the issues of whether or not plaintiff had
suffered a serious impairment of a body function
and the amount of damages. On June 8, 1983, the
jury specifically found that plaintiff had not suf-
fered a serious impairment of a body function. The
circuit court entered a judgment of no cause of
action and subsequently denied plaintiff's motion
for judgment notwithstanding the verdict. Plaintiff
appeals as of right. I would reverse and remand
for a new trial on the issue of damages only.

Plaintiff, age 22, was a passenger in a car driven
by her fiancé (now her husband), when the vehicle
collided with an automobile driven by defendant
Kimberly Owens on June 22, 1980. Upon impact,
plaintiff's right arm hit a handle on the dashboard
of the vehicle. Paramedics cut open plaintff's shirt,
tied her arm to her body, and placed her on a
stretcher. Plaintiff's arm began to hurt on the way
to the hospital. Plaintiff lived in Florida and was a
self-employed agent for an insurance company.
Because of her broken arm, plaintiff was unable to
return to Florida and had to remain in Michigan
with her fiancé for about two months. Plaintiff is
right-handed. She testified that after the accident
she was unable to care for herself. Two months
after the accident, plaintiff went to stay with her
mother in Illinois. Plaintiff and her mother even-
tually returned to Florida. Plaintiff testified that
one Dr. Roeser released her to return to work on
October 21, 1980. She remained under a doctor's
care until January, 1981. Plaintiff stated that

prior to the accident her health was good. Plaintiff had never broken any bones or suffered from any major health problems.

According to plaintiff, after the accident her right arm had a slight bow. The arm ached when the weather changed and would sometimes "give out" when she tried to pick things up. Dr. Roeser did not tell plaintiff that she could not return to Florida, but plaintiff felt that she was not capable of traveling. On cross-examination, plaintiff testified that she wore a sling for two months following the accident. Plaintiff was not hospitalized. She did not wear a plaster cast. The sling that plaintiff wore did not restrict the movement of her shoulder. She returned to work without restrictions by October 21, 1980. Plaintiff wore the sling after she returned to work for protective purposes. She testified that she presently could turn her arm at the shoulder and had no difficulty reaching for objects.

Plaintiff's husband testified that upon returning from the emergency room plaintiff was in pain and unable to lie flat in bed. She took medication for pain. Plaintiff remained on a couch and was couch-ridden for six weeks following the accident. During that period, the witness had to bathe plaintiff, do her laundry, cut up her food, help her from the couch to the bathroom and help her change positions on the couch. Plaintiff was in such excruciating pain the first few days after the accident that she would occasionally vomit. The witness had to physically move plaintiff when she changed positions. Plaintiff was couch-ridden until August 7, 1980. Plaintiff could not wash her hair for six weeks following the accident. She had to wear her arm in a sling for two weeks. The only thing that plaintiff could do for six weeks was eat.

Plaintiff's mother testified that plaintiff stayed with her from August 29 until September 19, 1980.

Plaintiff had to wear her arm in a sling and take
medication for pain. The witness had to cook for
plaintiff, do her laundry, help her shower, and
help her dress. Plaintiff would cry at times be-
cause the arm hurt her.

Dr. Roeser, a board-certified orthopedic surgeon,
was the doctor who treated plaintiff. He was the
only medical witness who testified at trial. X-rays
revealed that plaintiff suffered from a comminuted
spiral fracture of the midshaft of her right hume-
rus: a twisted, shattering fracture of the right
arm. His treatment consisted of splinting her arm
to her body with a Velpeau sling and Ace band-
ages. The Velpeau sling wrapped around plaintiff's
body and supported her arm while the bandages
held plaintiff's arm against the trunk of her body.
No surgery was performed. He prescribed pain
medication. From the date of the accident, June
22, 1980, until July 8, plaintiff could not use her
right arm because it was held against her body by
the sling. From July 8 until July 24 plaintiff had
some use of her right arm. According to Dr.
Roeser, at this point plaintiff still could not use
the arm for "lifting or pulling," but could "use it
to get some motion and function back into the
joints". From July 24 until the end of August,
plaintiff could use her right hand to help her
function. From late August until October, plaintiff
had restricted use of the hand. Plaintiff could not
lift heavy objects or drive, however. There were no
restrictions on plaintiff's use of her arm after
October, 1980.

Dr. Roeser saw plaintiff the following January.
She had fully recovered. Tests indicated a perma-
nent loss of five degrees out of 150 degrees in
plaintiff's ability to straighten and bend her right
arm. Plaintiff also complained about sensitivity to
weather changes and weakness in her right arm.

After presenting her proofs, plaintiff moved for summary judgment on the issue of serious impairment of body function. The trial court denied the motion, stating that "reasonable minds" could differ as to whether or not plaintiff's injuries constituted a serious impairment. Plaintiff renewed the motion at the close of defendant's proofs. The trial court again denied the motion, stating that, since defendants' proofs did not relate to the issue of plaintiff's injuries, the reasons for the denial of the earlier motion applied to the renewed motion as well.

In his closing argument, defense counsel stated there was no dispute that plaintiff suffered a broken arm and that the injury "caused her some degree of impairment of a body function". Defense counsel attacked the credibility of plaintiff, her husband and her mother. However, defense counsel did not question the testimony of Dr. Roeser and, in fact, relied upon it in questioning the accuracy of plaintiff's other witnesses with respect to the difficulty and duration of plaintiff's recovery.

I agree with plaintiff's contentions that the trial court erred by submitting the issue of serious impairment to the jury and that her motion for summary judgment should have been granted. In so doing I would not preclude defendants from placing in issue the credibility of the plaintiff, her husband and her mother on the issue of damages.

In *Cassidy v McGovern,* 415 Mich 483, 502; 330 NW2d 22 (1982), the Court held that the question of serious impairment shall be decided as a matter of law by the trial court if there is no dispute regarding the nature and extent of the injury or the dispute is immaterial. Defendants argue that there was a dispute in this case as to the duration and seriousness of the impairment. However, there

was no apparent dispute concerning the nature of the impairment and the testimony of plaintiff's medical witness. In my view, if the undisputed testimony and proofs show a serious impairment as a matter of law, it does not matter that a dispute exists concerning other proofs. In such instances, the dispute "is not material", *Cassidy, supra,* because plaintiff's injury has crossed the threshold, and the area of disagreement does not encroach upon the realm short of the threshold.

In *Williams v McGowan,* 135 Mich App 457; 354 NW2d 382 (1984), this Court held that the plaintiff had not suffered a serious impairment, even though there was some dispute as to the extent of the injury, because, even when the evidence was viewed in a light most favorable to plaintiff, the injury did not reach the threshold of tort liability. Similarly, in the present case, if plaintiff's broken arm constituted a serious impairment even when the medical evidence is viewed in a light most favorable to defendants, then the trial court should not have submitted the issue to the jury.

As noted above, there was no doubt regarding the fact that plaintiff suffered a multiple fracture of the arm in the accident. She was completely unable to use her right arm for 16 days thereafter since it was strapped to her body. For another 16 days, her ability to use the arm was quite limited. For several weeks thereafter, plaintiff had limited, functional use of the arm. She did not enjoy full use of the arm until some four months after the accident. These were the objectively manifested facts, rather than plaintiff's subjective perceptions which may have exaggerated the significance of the facts but not the facts themselves. There was no dispute regarding this medical testimony.

I believe that the undisputed proofs indicate a serious, although temporary, impairment. To the

extent that the trial court indicated that a jury question remained because "reasonable minds" could differ as to the meaning of the undisputed evidence, the court incorrectly applied the Supreme Court's mandate in *Cassidy, supra.* The issue was one of law, not to be left to a hypothetical group of reasonable minds. "The responsibility of effectuating the legislative will is primarily a matter of law for the court and not properly left to determination by a jury." 415 Mich 502. Whether a fracture resulting in an inability to use the arm for a period of several weeks constitutes a serious impairment is, following *Cassidy,* a question of law. As noted in *Range v Gorosh (After Remand),* 140 Mich App 712, 716-717; 364 NW2d 686 (1984):

"Contrary to the defendants' assertions, the nature and extent of the plaintiff's injuries was not subject to factual dispute. The evidence clearly established, and all parties agreed, that plaintiff sustained six rib fractures and a fracture of the right clavicle and of a toe in the right foot. Defendants' arguments on appeal do not address the nature and extent of the plaintiff's injuries, but rather focus on the effect of these injuries upon her capacity to perform household chores and her ability to return to work. Thus, defendants in reality dispute only whether the plaintiff's injuries amount to a serious impairment of body function as contemplated by MCL 500.3135; MSA 24.13135. The existence of such a dispute does not prevent the trial court from deciding the question as a matter of law. On the contrary, the import of *Cassidy* is that such disputes are to be resolved by the trial judge, not the jury." (Footnote omitted.)

Based on the standards enunciated in *Cassidy* and numerous recent decisions of this Court, I answer the question of whether there was a serious impairment in the affirmative.

In *Cassidy, supra,* p 505, the Court held that

recovery in tort is available only for "objectively manifested injuries". Pain and suffering are not enough to reach the threshold unless they affect the functioning of the body. *Id.* "[T]he Legislature intended an objective standard that looks to the effect of an injury on the person's general ability to lead a normal life." *Id.* In *Hermann v Haney,* 98 Mich App 445, 449; 296 NW2d 278 (1980), *aff'd* 415 Mich 483; 330 NW2d 22 (1982), this Court stated "that, in order to meet the threshold of serious impairment, *either* the initial injury must be severe *or* the effects must be continuing—either permanent or long-term". (Emphasis supplied.) Where a plaintiff's alleged injuries had little or no physical manifestation and were not subject to medical measurement, this Court has affirmed judgments for the defendant. *Guerrero v Schoolmeester,* 135 Mich App 742; 356 NW2d 251 (1984); *Williams v Payne,* 131 Mich App 403; 346 NW2d 564 (1984). On the other hand, if the injury affected an important body function, was objectively manifested, and had a detrimental effect on the plaintiff's ability to live normally, this Court has held in the plaintiff's favor. *Range, supra; LaHousse v Hess,* 125 Mich App 14; 336 NW2d 219 (1983). See, also, *Argenta v Shahan,* 135 Mich App 477; 354 NW2d 796 (1984), *lv gtd* 421 Mich 858 (1985).

I conclude, as a matter of law, that plaintiff's injury was a serious impairment of a body function. The injury was objectively manifested, as shown by x-rays and medical testimony. *Range, supra.* "[T]he impaired body function [was] an important one affecting [plaintiff's] ability to live a normal life." *Salim v Shepler,* 142 Mich App 145, 149; 369 NW2d 282 (1985). The detrimental effect on plaintiff's lifestyle, though not permanent or long-term, was quite severe. She had no significant

use of the arm for more than a month, and restricted use thereafter.

In two recent cases, this Court held that a fractured clavicle did not constitute a serious impairment. *Wolkow v Eubank,* 139 Mich App 1; 360 NW2d 320 (1984); *Burk v Warren (After Remand),* 137 Mich App 715; 359 NW2d 541 (1984), *lv gtd* 422 Mich 935 (1985). I believe those cases are distinguishable from the present one. In *Burk, supra,* there was no showing that the plaintiff could not use his hand or that he had trouble eating. 137 Mich App 725. In *Wolkow,* the plaintiff was, within two days, "able to use both arms, restricted only by her tolerance of pain and the soft plastic clavicle strap". 139 Mich App 6. In this case, plaintiff's arm was strapped to her body for 16 days. It was not until the end of that period that plaintiff could use the right hand to hold eating utensils. The detrimental effect on her lifestyle, although temporary, was much greater than was experienced by the plaintiffs in the broken clavicle cases.

My conclusion that plaintiff suffered a temporary serious impairment as a matter of law dictates reversal and remand for a new trial as to damages only. As defendants correctly observe, a dispute remains regarding the extent and duration of the impairment. However, at retrial, plaintiff would be able to recover damages for pain and suffering and other effects of the injury experienced even after the impairment was no longer serious. *Byer v Smith,* 419 Mich 541; 357 NW2d 644 (1984).

Another issue in this case arises from defense counsel's cross-examination of plaintiff concerning an alleged drinking problem. Before trial, plaintiff moved to bar questioning or argument concerning the treatment that plaintiff had received for a

drinking problem one year following the accident. Plaintiff argued that the issue was unrelated to the case and highly prejudicial. The trial court declined to rule on the motion immediately because it had not heard any testimony and did not know if such evidence would be relevant. The trial court advised plaintiff to renew the motion if it came up during trial. After plaintiff testified, but prior to cross-examination, defense counsel advised the court that he intended to inquire about plaintiff's drinking problem on cross-examination. The court ruled that defense counsel could not cross-examine plaintiff concerning the alleged drinking problem in order to impeach her credibility, but that he could cross-examine her to establish that her damages were caused by her drinking problem rather than the accident. Defense counsel proceeded as follows:

"*Q.* You had indicated on direct examination that your health prior to this accident was good, did you not?

"*A. (Plaintiff):* Yes, that's right.

"*Q.* Is it not true that in October of 1981 you saw Mr. Mahoney for a drinking problem and indicated to him that you had had the problem for three and one-half years?

"*A.* No, that is not true.

"*Q.* You were under oath?

"*A.* Dr. Mahoney was an orthopedic surgeon.

"*Q.* Do you recall telling Dr. Mahoney you had a drinking problem and you had the problem for three and one-half years?

"*A.* I did not.

"*[Defense Counsel]:* I have no further questions."

Plaintiff had testified on direct examination that she had no health problems before the accident. She stated that after the accident she was in great

pain and unable to care for herself for a time. In addition, plaintiff claimed that after her arm healed it continued to react to weather changes and sometimes gave out when she tried to lift objects. The issue posed is whether the trial court abused its discretion by allowing defense counsel to cross-examine plaintiff concerning her alleged drinking problem before the accident. Defendants argue that plaintiff put the matter in issue by testifying that her health was good before the accident. They also urge that the alleged drinking problem was relevant to the extent of plaintiff's residual damages.

I find no abuse of discretion by the trial court. The matter of plaintiff's drinking was arguably relevant to the state of her health, which, she had testified, was good before the accident. MRE 401. Nevertheless, I am troubled by the danger of unfair prejudice from such questioning. MRE 403. Although defense counsel claimed he had proof of the prior statement, none was introduced. Extrinsic evidence of a prior inconsistent statement is admissible if the witness is given an opportunity to deny the statement. MRE 613(b). I do not suggest that there is always an obligation to submit such evidence to show the basis of the questioning, yet I must be mindful of the pernicious effects of the injection, however subtle, of unfounded innuendo into the proceedings. See, *Kern v St Luke's Hospital,* 404 Mich 339; 273 NW2d 75 (1978). At a retrial, if the court were to allow this line of questioning again, it should require proof that a drinking problem existed and some showing that plaintiff's drinking is relevant to her damages. Otherwise, the probative value of the evidence would be substantially outweighed by the danger of unfair prejudice. MRE 403; *Sclafani v Peter S*

*Cusimano, Inc,* 130 Mich App 728, 735; 344 NW2d
347 (1983).

I would reverse and remand for a new trial
limited to the issue of damages.