WILLIAMS v PAYNE

Docket No. 61436. Submitted January 18, 1983, at Detroit.—Decided January 3, 1984.

Abraham and Hattie Williams filed a tort action for injuries suffered in an automobile accident against Clifford E. Payne in Wayne Circuit Court. Mrs. Williams alleged serious impairment of body function, and Mr. Williams alleged serious impairment of body function and permanent serious disfigurement. In response to plaintiffs' motion for a directed verdict on the serious impairment issue, the trial court, John M. Wise, J., stated that it felt that plaintiffs' proofs were sufficient to meet the threshold injury requirement of the no-fault insurance act, but it sent the issue to the jury. The jury returned a verdict of no cause of action in favor of the defendant. Plaintiffs appeal. *Held:*

1. The question of whether a person has suffered a serious impairment of body function or a permanent serious disfigurement as those phrases are used in the no-fault act is a question of law to be decided by the trial court, not a question of fact for the jury to decide.

2. Neither the injuries suffered by Mrs. Williams nor those suffered by Mr. Williams meet the criteria necessary to be considered as having resulted in serious impairment of body function. The Williamses are left to their remedies under the no-fault act for noneconomic losses associated with their injuries.

3. The trial court's judgment of no cause of action, based on the jury's verdict, must be vacated as to Mr. Williams' claim of permanent serious disfigurement and the case remanded to the trial court for a new trial wherein the issue is to be decided by the court as a question of law. It is impossible to ascertain from

REFERENCES FOR POINTS IN HEADNOTES

[1-4, 6] 7 Am Jur 2d, Automobile Insurance §§ 25, 349.
Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.
[3, 4] 7 Am Jur 2d, Automobile Insurance § 358.
[5] 5 Am Jur 2d, Appeal and Error §§ 623, 891.
[6] 75 Am Jur 2d, Trial § 651.

the record whether the jury's general verdict of no cause of action was due to a failure of proofs of proximate cause or the jury's belief that Mr. Williams' scars did not constitute permanent serious disfigurement, an issue not for the jury to decide.

4. Plaintiffs' argument that the trial court should have used a modification of the special verdict form contained in SJI 67.02 is rejected. SJI 67.02 is an improper instruction under the facts of this case because it treats the serious impairment/permanent disfigurement issue as a jury question. It would have been improper to instruct the jury on SJI 67.02.

Affirmed in part, judgment vacated in part, and remanded.

1. INSURANCE — NO-FAULT ACT — TORT LIABILITY — SERIOUS IMPAIR-
   MENT OF BODY FUNCTION.

   Whether an injury is a serious impairment of body function under the no-fault act so as to give rise to tort liability for noneconomic loss is a question of statutory construction to be decided by the trial court; where there is no factual dispute regarding the nature and extent of a plaintiff's injuries or where a factual dispute is not material to the determination, the court must decide as a matter of law whether the plaintiff has suffered a serious impairment of body function (MCL 500.3135; MSA 24.13135).

2. INSURANCE — NO-FAULT ACT — TORT LIABILITY — SERIOUS IMPAIR-
   MENT OF BODY FUNCTION.

   Whether an injury results in a serious impairment of body function, for purposes of the no-fault act, must be decided on a case-by-case basis, and in order to be considered a serious impairment of body function the impairment must be of an important body function and the injuries must be objectively manifested (MCL 500.3135; MSA 24.13135).

3. INSURANCE — NO-FAULT ACT — TORT LIABILITY — PAIN AND
   SUFFERING.

   General pain and suffering is not sufficient to meet the threshold for avoiding the no-fault act's proscription against tort actions; death, serious impairment of body function, or permanent serious disfigurement is required (MCL 500.3135[1]; MSA 24.13135[1]).

4. INSURANCE — NO-FAULT ACT — TORT LIABILITY — PERMANENT
   SERIOUS DISFIGUREMENT.

   The issue of whether a person has suffered permanent serious disfigurement under the provisions of the no-fault act is a

question of law to be determined by the trial court (MCL 500.3135; MSA 24.13135).

5. APPEAL — JURY INSTRUCTIONS — PRESERVING QUESTION.
    Claimed errors in jury instructions will not be considered on appeal if the issue has not been properly preserved unless manifest injustice would otherwise result.

6. INSURANCE — NO-FAULT ACT — TORT LIABILITY — JURY INSTRUC-
    TIONS — SERIOUS IMPAIRMENT OF BODY FUNCTION — PERMA-
    NENT SERIOUS DISFIGUREMENT.
    A standard jury instruction which treats the issue of serious impairment of body function or permanent serious disfigurement as a jury question in a tort action brought under the no-fault act should not be given in cases where there is no factual dispute regarding the nature and extent of the plaintiff's injuries; in such cases, the question of serious impairment of body function or permanent serious disfigurement shall be decided as a matter of law by the court; likewise, if there is a factual dispute as to the nature and extent of a plaintiff's injuries, but the dispute is not material to the determination whether the plaintiff has suffered a serious impairment of body function, the court shall rule as a matter of law whether the threshold requirement for avoiding the no-fault act's proscription against tort actions has been met (MCL 500.3135; MSA 24.13135; SJI 67.02).

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P.C.* (by *C. F. Boyle, Jr.*), for plaintiff.

*Mitchell & Leons, P.C.* (by *Robert I. Morrison*), and *Gromek, Bendure & Thomas* (by *James G. Gross*), of counsel, for defendant.

Before: V. J. BRENNAN, P.J., and GRIBBS and C. J. HOEHN,* JJ.

PER CURIAM. This case involves a tort action for injuries suffered in an automobile accident. The plaintiffs, Abraham and Hattie Williams, sued the defendant, Clifford Edward Payne, for negligence. Mrs. Williams alleged serious impairment of body

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

function; Mr. Williams alleged serious impairment of body function and permanent serious disfigurement.[1] At the close of proofs, the plaintiffs moved for a directed verdict on the serious impairment issue. The trial judge stated that he felt the plaintiffs' proofs were sufficient to meet the threshold injury requirement of MCL 500.3135; MSA 24.13135, but he sent the issue to the jury. The jury returned a verdict for the defendant. The plaintiffs appeal, raising two issues.[2] We affirm in part and vacate and remand in part.

## I. THRESHOLD INJURIES UNDER SECTION 3135

### A. *History*

The no-fault act was intended in part to reduce excessive litigation of automobile accident cases while assuring that insurers make adequate and prompt payment for certain losses. *Shavers v Attorney General,* 402 Mich 554, 579; 267 NW2d 72 (1978). The Legislature also intended, though, to retain some tort remedies "to allow the catastrophically injured victim * * * compensation in addition to that provided by * * * the act". *Workman v Detroit Automobile Inter-Ins Exchange,* 404 Mich 477, 509; 274 NW2d 373 (1979). This case has been brought under § 3135 of the no-fault act, which states:

"A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body

---

[1] MCL 500.3135; MSA 24.13135, quoted *infra.*

[2] Two other issues, relating to loss of consortium and vagueness of MCL 500.3135, were withdrawn at oral argument by the plaintiffs. We express no opinion on those issues.

function, or permanent serious disfigurement." MCL 500.3135(1); MSA 24.13135(1).

The question of whether "serious impairment of body function" and "permanent serious disfigurement" are issues of fact or law leads to the dispute in our case. In 1973 the Michigan Supreme Court declared in an advisory opinion that those phrases "are within the province of the trier of fact". *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441, 481; 208 NW2d 469 (1973). Decisions of the Court of Appeals applied this standard,[3] and the trial court here applied it as the law of this case. On December 23, 1982, however, the Supreme Court declared the phrases to be matters of statutory interpretation—questions of law for the court:

"We believe several considerations are instructive in determining whether the threshold requirement of 'serious impairment of body function' is primarily a phrase presenting a fact question for the trier of fact, or a phrase requiring judicial definition as a matter of law. First, it is not a term commonly used, for which juries would have a clear sense of the intended meaning. Hence, the phrase differs from 'intoxication', as used in the dramshop act, see *Rizzo v Kretschmer* [389 Mich 363; 207 NW2d 316 (1973)]. It also differs from more specific requirements that could have been enumerated as threshold requirements for the no-fault act, *e.g.,* broken bones, dismemberment, etc.

"Second, and important especially in conjunction with the first factor, one of the important reasons behind the no-fault act was to reduce litigation in automobile accident cases. Considering that the phrase involved is unspecific and one concerning which reason-

---

[3] *E.g., Earls v Herrick,* 107 Mich App 657, 664; 309 NW2d 694 (1981); *Abraham v Jackson,* 102 Mich App 567, 570; 302 NW2d 235 (1980); *Watkins v City Cab Corp,* 97 Mich App 723, 725; 296 NW2d 162 (1980).

able minds can usually differ regarding specific applications, if the interpretation of the phrase is a matter to be left to the trier of fact, a trial would in most instances be required to determine whether the threshold requirements have been met. Such a consequence would certainly be contrary to the legislative intent in creating the threshold requirements.

"Third, we cannot believe that the Legislature, when limiting the continued existence of traditional tort liability to certain specified exceptions, intended that the limits which they created would vary according to the specific jury impaneled or the specific part of the state in which a case was to be tried. Although the requirement of serious impairment of body function lacks specificity, uniformity in its application is to some extent attainable through statutory construction by the appellate courts. Unlike traditional tort litigation where differing views among differing juries are generally acceptable, the question whether tort immunity attaches is not a question which we believe the Legislature intended to leave as primarily a question for the trier of fact.

"The responsibility of effectuating the legislative will is primarily a matter of law for the court and not properly left to determination by a jury. *Cf. Rusinek v Schultz, Snyder & Steele Lumber Co,* 411 Mich 502; 309 NW2d 163 (1981). Therefore, we conclude that the meaning of 'serious impairment of body function' *is a matter to be determined by statutory construction.* We hold that when there is no factual dispute regarding the nature and extent of a plaintiff's injuries, the question of serious impairment of body function *shall be decided as a matter of law by the court.* Likewise, if there is a factual dispute as to the nature and extent of a plaintiff's injuries, but the dispute is not material to the determination whether plaintiff has suffered a serious impairment of body function, the court shall rule as a matter of law whether the threshold requirement of MCL 500.3135; MSA 24.13135 has been met." *Cassidy v McGovern,* 415 Mich 483, 501-502; 330 NW2d 22 (1982) (emphasis added).

It is the *Cassidy* rule which we are bound to apply here.

B. *Serious Impairment of Body Function*

At this stage in its legal evolution, "serious impairment of body function" must be decided on a case-by-case basis. *Cassidy v McGovern,* 415 Mich 503. A few standards have developed, though, which will assist the courts. First, "impairment of body function" actually means "impairment of *important* body functions". *Cassidy v McGovern,* 415 Mich 504. Second, by its own terms, the statute requires that any impairment be "serious". MCL 500.3135(1); MSA 24.13135(1); *McKendrick v Petrucci,* 71 Mich App 200, 210; 247 NW2d 349 (1976). Third, the section applies only to "objectively manifested injuries". *Cassidy v McGovern,* 415 Mich 505.

The general character of Mrs. Williams' injuries is not seriously disputed. Her sole claim at trial was of an injury to the base of her right thumb. It was not fractured and no other medical abnormalities were found. Mrs. Williams experienced pain, though, and this pain was variously diagnosed as a sprained ligament and as tendonitis. The pain radiated through her wrist and into her arm. The pain made it difficult for her to perform household duties, but she testified that there were no specific chores which she could not do. On these facts, we conclude that Mrs. Williams' injuries did not *seriously impair* any important body functions.

Additionally, Mrs. Williams' soft tissue injuries were not subject to medical measurement.[4] Thus, they are not "objectively manifested" in a scientific or medical context. The symptoms of her injuries, however, have found objective manifesta-

---

[4] On the use of thermograms to measure muscular injuries or spasms, see *Deshotel v Avondale Shipyards, Inc,* 413 So 2d 208 (La App, 1982).

tion: pain makes certain activities difficult. The *Cassidy* opinion did not expressly designate which standard of manifestation to employ, objective medical measurements of injury or a patient's complaints of pain substantiated only by the patient's limited activities. We conclude that Mrs. Williams' injuries are not "objectively manifested" within the meaning of *Cassidy.* Medically unsubstantiated pain will always be present in a tort action for pain and suffering. The Legislature could not intend so low a threshold for avoiding the no-fault act's proscription against tort actions. General pain and suffering is not sufficient to meet the threshold. *Cassidy v McGovern,* 415 Mich 505. As the Supreme Court pointed out in *Cassidy,* the "serious impairment of body function" standard

"should be considered in conjunction with the other threshold requirements for a tort action for non-economic loss, namely, death and permanent serious disfigurement. MCL 500.3135; MSA 24.13135. The Legislature clearly did not intend to erect two significant obstacles to a tort action for non-economic loss and one quite insignificant obstacle." 415 Mich 503.

Additionally, the *Cassidy* decision spoke of "objectively manifested *injuries",* not symptoms. Mrs. Williams' injuries do not meet the "objectively manifested" requirement.

We hold, then, that the Legislature did not intend to allow tort actions based on the type of injuries suffered by Mrs. Williams. Mrs. Williams is left to her remedies under the no-fault act.

We reach the same conclusion on Mr. Williams' "serious impairment" issue. Mr. Williams complained of pain in his left shoulder, back, and legs. No medical abnormalities were found, but one examining physician did note a slight limitation of

movement in the shoulder. Another doctor testified that Mr. Williams also experienced limited movement of the hips and neck. The second doctor also testified that Mr. Williams' hands were in pain, but Mr. Williams denied this affliction. Mr. Williams testified that he was transferred to another job because he had some difficulty when lifting his left hand over his head and when gripping with his left hand.

Mr. Williams' case for serious impairment of an important body function is much closer than his wife's, but we hold that he too falls short of the threshold. His injuries are not objectively manifested. While his injuries no doubt impaired his ability to work, x-ray results were negative and no neurological disorder was found. Under *Cassidy*, Mr. Williams is also left to the no-fault act remedies for these noneconomic losses.

## C. *Permanent Serious Disfigurement*

Mr. Williams also claims a permanent serious disfigurement. The record shows that he suffered a cut to the forehead requiring 11 or 12 stitches. This left a scar which apparently was not visible to the jury from 15 feet, but was visible at closer distance. Scars on both legs had significantly healed, but were still partially visible.

Disfigurement goes to the physical characteristics of an injury rather than the injury's effect on the victim's lifestyle. Ascertaining the seriousness of disfigurement may often require physical observation by the trial court. On the other hand, ascertaining an injury's effect on important body functions will usually depend on verbal descriptions rather than demonstrative evidence. The appellate courts generally will be in as good a position as the trial court to judge, on these verbal

descriptions, the extent of impairment. In disfigurement cases based on physical observation, however, the appellate courts must grant great deference to the observations of the trial court on what is, in effect, a factual conclusion about the severity of an injury. The victims cannot be expected to parade their maladies through an appellate courtroom. The trial court is expected to make adequate findings on the record. GCR 1963, 517.1. It will describe the injuries and reach a legal conclusion on whether they meet the threshold. We will review the trial court's determination, reversing only when the court has abused its discretion.

We do not know whether Mr. Williams' scars form the basis for a tort claim. Although the trial court indicated that the scar on Mr. Williams' head was the type of injury intended to be covered by § 3135, the issue was sent to the jury. We do not know whether the jury's general verdict of no cause was due to a failure of proofs of proximate cause[5] or the jury's disbelief that the scars constituted "permanent serious disfigurement"—an issue the jury is not to decide under *Cassidy*. Accordingly, we must vacate the judgment relating to Mr. Williams' claim of permanent serious disfigurement and remand for a new trial consistent with the *Cassidy* opinion.[6]

## II. JURY INSTRUCTIONS

In their second issue the plaintiffs claim error in

---

[5] Duty and breach of duty were stipulated to at trial. The questions of proximate cause, serious impairment and disfigurement were the main issues submitted to the jury.

[6] *Cassidy* was decided after the trial in this matter. Thus, the record in our case was not prepared in recognition of the *Cassidy* principles. On remand the trial court will have an opportunity to rule on the threshold injury question under *Cassidy* and the parties will have an opportunity to develop a sufficient record for possible review. We hope the bar will recognize the difficulties of appellate review and consider introducing photographic documentation of asserted "permanent serious disfigurement".

the jury instructions used. The trial court used the general verdict form contained in SJI 65.01:

"Members of the jury, if you agree upon a verdict in favor of the plaintiff Abraham Williams, you may return your verdict as follows:

"We the jury find in favor of the plaintiff Abraham Williams and assess his damage in an amount that you deem fair and just.

"If you agree upon a verdict in favor of the defendant, Clifford Edward Payne, you may return your verdict as follows:

"We the jury find in favor of the defendant Clifford Edward Payne no cause for action.

"As to the plaintiff Hattie Williams you may return your verdict as follows:

"We the jury find in favor of the plaintiff Hattie Williams and assess her damages in an amount you deem fair and just.

"If you agree upon a verdict in favor of the defendant Clifford Edward Payne, you may return your verdict as follows:

"We the jury find in favor of the defendant Clifford Edward Payne no cause for action."

The plaintiffs argue that the court should have used a modification of the special verdict form contained in SJI 67.02. When discussing the jury instructions to be used, the trial judge said he would give the general form. The plaintiffs' attorney stated: "Well, I have no objection to the form the court is using." Their attorney later asked that SJI 67.02 be given on the loss of consortium count. The court indicated that no loss of consortium instructions would be given in light of this Court's opinion in *Rusinek v Schultz, Snyder & Steele Lumber Co,* 98 Mich App 380; 296 NW2d 262 (1980) (tort action for loss of consortium not al-

lowed).[7] The plaintiffs did not ask that the special verdict form be used for the underlying claims. By failing to request or properly object to the general form's use, and in fact by expressly accepting it, the issue is not properly preserved for appeal unless manifest injustice would otherwise result. *Hunt v Deming,* 375 Mich 581, 584; 134 NW2d 662 (1965). Manifest injustice would not result here because the trial court used an otherwise proper instruction.

We do not rest our decision on the procedural failure, though. Instead, we hold that SJI 67.02, as drafted, is an improper instruction on our facts under *Cassidy* because it treats the serious impairment/permanent disfigurement issue as a jury question. The instruction is proper, however, in cases where a factual dispute exists regarding the nature and extent of plaintiff's injuries and such dispute is *material* to the determination of serious impairment of body function.[8] From the arguments on appeal, it appears that the plaintiffs wanted a special verdict form which would have allowed the jury to decide the serious impairment/permanent disfigurement question where the necessary fac-

[7] The trial court and the parties did not know that the *Rusinek* case was reversed weeks before this trial. See *Rusinek v Schultz, Snyder & Steele Lumber Co,* 411 Mich 502; 309 NW2d 163 (1981).

[8] The limited mandate in *Cassidy* was as follows:

"We hold that when there is no factual dispute regarding the nature and extent of a plaintiff's injuries, the question of serious impairment of body function shall be decided as a matter of law by the court. Likewise, if there is a factual dispute as to the nature and extent of a plaintiff's injuries, but the dispute is not material to the determination whether plaintiff has suffered a serious impairment of body function, the court shall rule as a matter of law whether the threshold requirement of MCL 500.3135; MSA 24.13135 has been met." 415 Mich 502.

Thus, whether or not the dispute is material to the determination is a question for the court. Upon such finding SJI 67.02 appears to be an appropriate instruction. See Note on Use, SJI 36.01, 63 Mich B J 79 (1984).

tual dispute was missing.[9] Thus, we must assume that the plaintiffs' proposed modified jury instruction suffers the same infirmity as the verdict form upon which it is based. Although the trial court did not realize it at the time, it would have been improper to instruct as the plaintiffs now request.[10]

For the reasons stated, we affirm the judgments for the defendant against Mrs. Williams and Mr. Williams on the issue of serious impairment of body function. We vacate and remand the judgment for the defendant and against Mr. Williams on the issue of permanent serious disfigurement for further proceedings consistent with the Supreme Court's opinion in *Cassidy v McGovern.*

---

[9] The plaintiffs' proposed instruction appears nowhere in the record or in the briefs. We must base our estimation of the proposed instruction's particulars on the gist of the plaintiffs' appellate arguments.

[10] Had the court given the special verdict form to the jury, we would now know whether remand is necessary on the permanent disfigurement issue discussed in section I of this opinion. While it would help settle the disposition of the case on appeal, the instruction would nevertheless be improper under *Cassidy.*