KANAZIZ v ROUNDS

Docket No. 83946. Submitted April 8, 1986, at Grand Rapids. Decided July 8, 1986. Leave to appeal denied, 426 Mich 876.

Plaintiff, Christopher Kanaziz, sustained injuries in an automobile accident involving defendant, Lois M. Rounds. A medical examination, performed immediately following the accident, revealed that plaintiff suffered a cardiac contusion and that his electrocardiogram showed an increased intraventricular conduction time and that he received a mark on his chest from the steering wheel of the automobile he was driving and lacerations, including a jagged cut to the right eyelid. Plaintiff filed suit against defendant in the Ottawa Circuit Court, alleging serious impairment of body function and permanent serious disfigurement. The circuit court, Calvin L. Bosman, J., on defendant's motion, granted summary judgment in favor of defendant. Plaintiff refused to sign a proposed order of summary judgment dismissing plaintiff's suit, contending that the circuit court's ruling was not dispositive of his $400 mini-tort claim. Over plaintiff's objection, the circuit court entered the order of summary judgment dismissing plaintiff's suit. Plaintiff appealed. *Held:*

1. The correct functioning of the heart is an important body function. However, plaintiff failed to establish (1) that he suffered a serious impairment of body function and (2) that he suffered an objectively manifested injury.

2. The wound to plaintiff's right eyelid, as described by the surgeon who treated him was just over one inch in length and jagged or star-shaped. The resulting scar was considered permanent. However, plaintiff was not seriously disfigured to an

REFERENCES

Am Jur 2d, Automobile Insurance §§ 348-349.

Am Jur 2d, Insurance §§ 2028 *et seq.*

Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.

See also the annotations in the ALR3d/4th Quick Index under No-Fault Insurance.

extent sufficient to overcome the no-fault threshold for permanent serious disfigurement.

3. Plaintiff did not sufficiently state a claim for damages under the mini-tort provision of the no-fault act.

Affirmed.

1. INSURANCE — NO-FAULT INSURANCE — SERIOUS IMPAIRMENT OF BODY FUNCTION — SERIOUS DISFIGUREMENT.

The threshold question of the existence of a serious impairment of body function or permanent serious disfigurement under the no-fault act so as to give rise to tort liability for noneconomic loss is a question for the trial court to decide as a matter of law where there is no material factual dispute as to the nature and extent of plaintiff's injuries (MCL 500.3135; MSA 24.13135).

2. INSURANCE — NO-FAULT INSURANCE — SERIOUS IMPAIRMENT OF BODY FUNCTION.

The question of whether an individual has suffered a serious impairment of a body function within the meaning of the no-fault act must be decided on a case-by-case basis; in making that decision, a trial court must determine: (1) whether the alleged impairment is an impairment of an important body function, (2) whether the impairment is serious, and (3) whether the impairment results from objectively manifested injuries (MCL 500.3135; MSA 24.13135).

3. INSURANCE — NO-FAULT INSURANCE — SERIOUS IMPAIRMENT OF BODY FUNCTION.

A serious impairment of body function under the no-fault act is to be measured by an objective standard which looks to the effect of an injury on a person's general ability to live a normal life; such injury must be objectively manifested; medically unsubstantiated pain and suffering does not meet the no-fault threshold for recovery for noneconomic loss (MCL 500.3135; MSA 24.13135).

4. INSURANCE — NO-FAULT INSURANCE — SERIOUS DISFIGUREMENT.

The question of whether an injury amounts to a permanent serious disfigurement so as to give rise to tort liability for noneconomic loss under the no-fault act depends on its physical characteristics rather than its effect on the plaintiff's ability to live a normal life (MCL 500.3135; MSA 24.13135).

*Saukas & Idema* (by *Michael L. Idema*), for plaintiff.

*William J. Hipkiss,* for defendant.

Before: R. M. Maher, P.J., and T. M. Burns and R. H. Bell,* JJ.

Per Curiam. Plaintiff appeals as of right from a trial court order granting defendant summary judgment and dismissing plaintiff's claims.

Plaintiff commenced this suit to obtain damages for injuries sustained in an automobile accident which occurred on April 26, 1983. Plaintiff alleged serious impairment of a body function and permanent serious disfigurement. Defendant moved for summary judgment on both issues. On February 8, 1985, the trial court filed a written opinion concluding that, as a matter of law, plaintiff had not suffered a serious impairment of a body function or a permanent serious disfigurement. Defendant submitted a proposed order of summary judgment dismissing plaintiff's claims. Plaintiff objected on the ground that the trial court's written opinion was not dispositive of plaintiff's $400 mini-tort claim. Over plaintiff's objections, the trial court entered the order of summary judgment and dismissed all claims against defendant.

Plaintiff first argues that the trial court erred when it determined that he did not suffer a "serious impairment of body function." We disagree.

When there is no material factual dispute as to the nature and extent of a plaintiff's injuries, courts are to decide as a matter of law whether there has been a "serious impairment of body function" under Michigan's no-fault act, MCL 500.3135(1); MSA 24.13135(1). See *Cassidy v McGovern,* 415 Mich 483; 330 NW2d 22 (1982), reh den 417 Mich 1104 (1983). In reviewing the facts of the case, the benefit of any reasonable doubt must be given to the party opposing a motion for sum-

* Circuit judge, sitting on the Court of Appeals by assignment.

mary judgment. *Garris v Vanderlaan,* 146 Mich App 619; 381 NW2d 412 (1985).

Serious impairment of a body function is decided on a case-by-case basis under the following three-part test: (1) the impairment must be of an important body function; (2) the impairment must be serious; and (3) the injuries must be objectively manifested. *Williams v Payne,* 131 Mich App 403, 409; 346 NW2d 564 (1984). Whether an impairment is serious should be viewed in light of the other threshold requirements found in the no-fault act, namely death or permanent serious disfigurement. 131 Mich App 410. The threshold requirement of serious impairment of body function is a significant obstacle to tort recovery for non-economic loss. *Franz v Woods,* 145 Mich App 169; 377 NW2d 373 (1985). The legislative intent in creating thresholds for recovery was to allow the catastrophically injured victim to recover. *Workman v DAIIE,* 404 Mich 477; 274 NW2d 373 (1979).

To determine whether an injury meets the threshold requirement of impairment of an important body function, the injured plaintiff's ability to lead a normal lifestyle must be considered. Simple difficulty or inconvenience in daily life does not meet the threshold. *Morris v Levine,* 146 Mich App 150; 379 NW2d 402 (1985). There must be a general inability to live what objectively can be determined to be a normal lifestyle. *Morris, supra.* The injury must also be objectively manifested. *Williams, supra.* Medically unsubstantiated pain and suffering, always present in a tort action for pain and suffering, does not meet the no-fault threshold. *Id.; Cassidy, supra,* p 505. Although permanence is relevant to a finding of serious impairment, an injury does not have to be permanent to be serious. *Cassidy, supra,* pp 505-506. See

also, *Sherrell v Bugaski,* 140 Mich App 708, 710-711; 364 NW2d 684 (1984).

In the instant case, plaintiff suffered from a chest injury which was diagnosed immediately after the accident as a cardiac contusion. Following the accident, plaintiff had a mark from the steering wheel left on his chest by the force with which he struck the steering wheel. Plaintiff suffered lacerations, including a jagged cut to the right eyelid. Viewing the facts in a light most favorable to plaintiff, we believe he suffered at least a *temporary* impairment of an important body function. Immediately after the accident, plaintiff's electrocardiogram showed an increased intraventricular conduction time. We agree with plaintiff that the correct functioning of the heart is an important body function. Nevertheless, we believe that plaintiff failed to establish either of the other two threshold requirements: (1) that plaintiff suffered a "serious" impairment of body function; and (2) that plaintiff suffered an objectively manifested injury.

While plaintiff's injuries may have been temporarily measurable in the form of an irregular electrocardiogram and a mark on the chest, testimony given by Dr. Overy indicated that the results of the hospital electrocardiogram were "not of any significance" and the later "R waves and right precordia leads" were very common in young people. Further, electrocardiograms taken one and one-half months and one year after the accident were completely normal. Dr. Overy stated that there was no evidence that plaintiff suffered any permanent injuries as a result of the automobile accident and that he thought plaintiff was "home clear with no worry about future cardiac damage."

Although plaintiff complained of chest discomfort following the accident, no medical evidence

was submitted to show that the pain was tied to a heart condition caused by the accident. Medically unsubstantiated pain and suffering does not meet Michigan's no-fault threshold for recovery for noneconomic loss. *Cassidy, supra,* p 505.

In addition, plaintiff's injuries cannot be considered serious when viewed in light of the other no-fault thresholds, i.e., death and permanent serious disfigurement. Plaintiff's ability to lead a normal lifestyle does not appear to be seriously impaired by the injuries sustained in the accident. In order to sustain a claim of impairment of an important body function, the plaintiff's ability to lead a normal lifestyle must be adversely affected. *Morris, supra.* In this case plaintiff testified that he was told to "take it easy" after the accident. Plaintiff did not take a summer job or involve himself in strenuous activity following his injury. No other testimony or evidence was given which would indicate that plaintiff's lifestyle was otherwise affected. Plaintiff was a student at Grand Valley State College before and after the accident.

We conclude that plaintiff failed to establish that the injuries he suffered were objectively manifested and that any impairment he suffered was serious when compared with the other no-fault thresholds, i.e., death or serious permanent disfigurement. *Cassidy, supra,* p 503.

Plaintiff argues that the trial court erred in determining that he did not suffer a "permanent serious disfigurement." Again, we disagree.

Where there is no material factual dispute as to the nature and extent of a plaintiff's injuries, the threshold question of permanent serious disfigurement is a question of statutory construction to be resolved by the court as a matter of law. *Kosack v Moore,* 144 Mich App 485; 375 NW2d 742 (1985). Whether an injury amounts to a permanent seri-

ous disfigurement depends on its physical characteristics. *Id.* Although the Supreme Court's decision in *Cassidy* deals only with serious impairment of body function, this Court has held that the Supreme Court's reasoning and analysis apply equally to the threshold issue of permanent serious disfigurement. *Shortridge v Bailey,* 145 Mich App 547; 378 NW2d 544 (1985).

This Court's review of the trial court's decision whether a plaintiff has suffered a permanent serious disfigurement was aptly stated in *Williams, supra,* 131 Mich App 411-412:

> Disfigurement goes to the physical characteristics of an injury rather than the injury's effect on the victim's lifestyle. Ascertaining the seriousness of disfigurement may often require physical observation by the trial court. . . . In disfigurement cases based on physical observation, the appellate courts must grant great deference to the observations of the trial court on what is, in effect, a factual conclusion about the severity of an injury. The victims cannot be expected to parade their maladies through an appellate courtroom. The trial court is expected to make adequate findings on the record. GCR 1963, 517.1. It will describe the injuries and reach a legal conclusion on whether they meet the threshold. We will review the trial court's determination, reversing only when the court has abused its discretion.

According to the surgeon who treated plaintiff, the right eyelid wound was just over one inch in length and "jagged" or "star shaped." The resulting scar was considered to be permanent. Plaintiff's physician recommended that he apply a sun screen to the area of the scar should he be exposed to significant, direct sunlight.

Although no photographs were included in the record now before this Court, from plaintiff's testi-

mony and the trial court's conclusions in its opinion, we conclude that plaintiff's scar is not immediately and readily noticeable. Plaintiff admitted that people who did not know him would not "really notice" the scar. We agree with the trial court that plaintiff has not suffered a permanent serious disfigurement.

Plaintiff argues that the trial court erroneously dismissed his "mini-tort" claim brought pursuant to MCL 500.3135(2)(d); MSA 24.13135(2)(d). Under the statute, a person remains subject to tort liability arising from the ownership, maintenance or use of a motor vehicle, for damages up to $400 to motor vehicles, to the extent that damages are not covered by insurance.

From our review of plaintiff's complaint, we conclude that he did not state a claim for damages under § 3135. Plaintiff's averment that he "claims all damages allowable under Michigan law as a consequence of the negligence of this defendant" is insufficient insofar as it purports to be an allegation of a cause of action under § 3135.

Affirmed.