NETTER v BOWMAN

Docket No. 268571. Submitted August 8, 2006, at Detroit. Decided
    September 19, 2006, at 9:10 a.m.

Amber Netter brought an action in the Wayne Circuit Court against
    Sharon R. Bowman seeking damages for injuries she suffered when
    Bowman backed her car into Netter's car. Bowman moved for
    summary disposition, arguing that Netter's injuries, which included
    Netter's premature delivery of twins in addition to various soft-tissue
    injuries, were not objectively manifested and therefore did not meet
    the threshold of a serious impairment of body function required for
    tort recovery under the no-fault act, MCL 500.3101 *et seq*. The trial
    court, William J. Giovan, J., granted the motion on the ground that,
    although the accident affected Netter's ability to lead her normal life,
    Netter failed to establish that her injuries were medically identifiable,
    which the trial court ruled was the proper standard for establishing
    objectively manifested injuries under MCL 500.3135. Bowman ap-
    pealed.

    The Court of Appeals *held*:

    1. This Court is bound to follow the ruling in *Jackson v Nelson*,
    252 Mich App 643 (2002), which held that, while the Legislature's
    1996 amendment of MCL 500.3135 apparently rejected the "medi-
    cally identifiable" standard for evaluating injuries set forth in *Di-
    Franco v Pickard*, 427 Mich 32 (1986), in favor of the "medically
    measurable" standard set forth in *Cassidy v McGovern*, 415 Mich 483
    (1982), the Legislature did not explicitly repudiate the "medically
    identifiable" standard, despite being presumptively aware of the
    holding in *DiFranco*. Accordingly, the test for objectively manifested
    impairments set forth in the standard jury instruction on the subject
    — SJI2d 36.11, which requires "a medically identifiable injury or
    condition that has a physical basis" — is an accurate reflection of the
    law.

    2. The current meaning of "objectively manifested" requires that
    a plaintiff's injury be capable of objective verification by a qualified
    medical person either because the injury is visually apparent or
    because it is capable of detection through the use of medical testing.

    3. Contrary to the trial court's conclusion, Netter failed to
    show that the course or trajectory of her normal life was impaired
    by her six-month period of recuperation from the accident; how-

ever, because the trial court's disposition was correct, reversal is not necessary.

Affirmed.

WILDER, J., concurring, agreed with the majority that the trial court erred by concluding that Netter's injuries impaired her general ability to lead a normal life, and agreed that summary disposition was correctly granted in favor of Bowman. However, he would not have addressed the question whether Netter suffered a serious impairment of body function.

1. INSURANCE — NO-FAULT — SERIOUS IMPAIRMENT OF BODY FUNCTION — OBJECTIVELY MANIFESTED IMPAIRMENTS — "MEDICALLY IDENTIFIABLE" STANDARD.

The test for objectively manifested impairments that meet the no-fault threshold for tort recovery set forth in the standard jury instruction on the subject — SJI2d 36.11, which requires "a medically identifiable injury or condition that has a physical basis" — is an accurate reflection of the law (MCL 500.3135[7]).

2. INSURANCE — NO-FAULT — SERIOUS IMPAIRMENT OF BODY FUNCTION — OBJECTIVELY MANIFESTED IMPAIRMENTS.

An "objectively manifested" injury, for purposes of the no-fault act, is capable of objective verification by a qualified medical person because it is visually apparent or capable of detection through the use of medical testing (MCL 500.3135[7]).

*Bernstein & Bernstein* (by *Thomas B. Calcatera* and *Harvey M. Howitt*) for the plaintiff.

*Secrest Wardle* (by *Michael L. Updike*) for the defendant.

Before: WHITBECK, C.J., and HOEKSTRA and WILDER, JJ.

WHITBECK, C.J. In this no-fault action,[1] plaintiff Amber Netter appeals as of right the circuit court's order granting defendant Sharon Bowman summary disposition and dismissing the case. We affirm. We decide this appeal without oral argument.[2]

[1] MCL 500.3101 *et seq.*

[2] MCR 7.214(E).

### I. BASIC FACTS AND PROCEDURAL HISTORY

On July 16, 2004, Amber Netter was a passenger in a stopped car when the car ahead, which Sharon Bowman was driving, backed up, causing a collision. The accident report described minimal damage to both vehicles and estimated that the impact speed was less than five miles per hour. At the time of the accident, Netter was a healthy 17-year-old, several months into an uncomplicated pregnancy with twins. Netter, complaining of burning or cramping pains, was hospitalized after the accident because she seemed susceptible to premature delivery. Netter gave birth to her twins several weeks prematurely.

Netter filed suit, asserting that the accident caused her to suffer various soft-tissue injuries and induced her premature delivery, leaving her suffering a serious impairment of body function. Bowman moved for summary disposition, arguing that Netter exhibited no objective sign of injury. The trial court granted the motion on the grounds that the premature birth itself engendered no actionable claim on Netter's part and that Netter otherwise failed to show that she had suffered an objectively manifested injury.

More specifically, with respect to the objective manifestation of injury, the trial court opined that there is a distinction between an injury that is medically *measurable* and an injury that is merely medically *identifiable* by a physician and has a physical basis. The trial court explained that *Williams v Payne* established the test for objective manifestation as whether the injury was medically *measurable*.[3] However, that test was eradicated, the trial court explained, by *DiFranco v Pickard*, which held that all that was required was that the injury be

---

[3] *Williams v Payne*, 131 Mich App 403, 409; 346 NW2d 564 (1984), overruled by *DiFranco v Pickard*, 427 Mich 32 (1986).

medically *identifiable* and have a physical basis.[4] The trial
court opined that this change was "devised to negate
the requirement of Objective Manifestation as ordinary
people know it." But the trial court further explained
that following *DiFranco* the Legislature amended the
no-fault act[5] to explicitly confirm the objective manifes-
tation requirement. That is, according to the trial court,
the addition of the objective manifestation language
into the statute was the Legislature's attempt to write
the *Williams* interpretation—medically *measurable*—
back into the legal framework. Thus, the trial court
opined that the *DiFranco* holding was the wrong con-
struction to apply to determine objective manifestation.

The trial court further related that, following the
amendment of the no-fault act, the committee on stan-
dard civil jury instructions essentially ignored this legis-
lative enactment and chose instead to continue to use the
*DiFranco* definition for SJI2d 36.11. The trial court then
went on to explain that the committee on model jury
instructions (of which he was the chairperson) later voted
to amend SJI2d 36.11 to remove the *DiFranco* language.
The trial court acknowledged, however, that the change
was never made. The trial court then explained that the
change failed to go through in light of this Court's release
of *Jackson v Nelson*, which expressly approved the SJI2d
36.11 language employing the *DiFranco* "medically iden-
tifiable" standard.[6] But, the trial court opined, a reading
of the *Jackson* opinion evidenced that this Court *actually*
intended to employ the traditional sense of objective
manifestation—that is, the *Williams* medically *measur-
able* interpretation. According to the trial court, the *Jack-
son* Court "did not appreciate that this language, in 36.11,

---

[4] *DiFranco, supra* at 74-75.

[5] 1995 PA 222, effective March 28, 1996, adding MCL 500.3135(7).

[6] *Jackson v Nelson*, 252 Mich App 643, 653; 654 NW2d 604 (2002).

had been written to remove, to mitigate, to deflate the requirement of Objective Manifestation."

The trial court acknowledged that the accident had affected Netter's general ability to lead her normal life. But the trial court concluded that Netter's claim did not satisfy the objective manifestation requirement because it merely rose to the level of being medically identifiable, not medically measurable. Although Netter argued that her injury did satisfy the medically measurable test, given her doctor's diagnosis of her condition, the trial court declined to recognize her claims, noting that there was really nothing objective to support them. Netter now appeals.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo as a question of law.[7] "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial."[8] We also review de novo the proper interpretation of a statute.[9]

### B. *KREINER* STANDARDS

This Court's assessment of a claim for noneconomic loss under the no-fault act is principally governed by the Michigan Supreme Court's opinion in *Kreiner v Fischer*.[10]

---

[7] *Ardt v Titan Ins Co*, 233 Mich App 685, 688; 593 NW2d 215 (1999).

[8] *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004).

[9] *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626, 631; 563 NW2d 683 (1997).

[10] *Kreiner v Fischer*, 471 Mich 109; 683 NW2d 611 (2004).

A person "remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement."[11] Serious impairment of body function "means an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life."[12] Where there is no factual dispute concerning the nature and extent of the injuries, or where no such factual dispute is material to the question whether the person has suffered serious impairment of a body function, whether a person has suffered serious impairment of a body function is a question of law for the court.[13] Accordingly, "the issue . . . should be submitted to the jury only when the trial court determines that an 'outcome-determinative genuine factual dispute' exists."[14]

If the trial court can decide the issue as a matter of law, it must determine if the plaintiff's injury has impaired an "important body function."[15] If the trial court finds that an important body function has been impaired, it must then determine if the impairment is objectively manifested.[16] "Subjective complaints that are not medically documented are insufficient."[17] If the impairment of an important body function is objectively manifested, the trial court must then determine if the impairment

---

[11] MCL 500.3135(1); *Kreiner, supra* at 129.

[12] MCL 500.3135(7); *Kreiner, supra* at 129.

[13] MCL 500.3135(2)(a)(i) and (ii); *Kreiner, supra* at 131-132.

[14] *Miller v Purcell,* 246 Mich App 244, 247; 631 NW2d 760 (2001), quoting *Kern v Blethen-Coluni,* 240 Mich App 333, 341; 612 NW2d 838 (2000).

[15] *Kreiner, supra* at 132.

[16] *Id.*

[17] *Id.*

affects the plaintiff's general ability to lead his or her normal life.[18] "Although some aspects of a plaintiff's entire normal life may be interrupted by the impairment, if . . . the course or trajectory of the plaintiff's normal life has not been affected, then the plaintiff's 'general ability' to lead his normal life has not been affected" for purposes of establishing a serious impairment.[19]

In determining whether the course of the plaintiff's normal life has been affected, "the trial court must engage in an objective analysis regarding whether any difference between the plaintiff's pre-and post-accident lifestyle has actually affected the plaintiff's 'general ability' to conduct the course of his life."[20] A de minimis effect on the plaintiff's life is insufficient under that analysis.[21] "[M]inor changes in how a person performs a specific activity may not change the fact that the person may still 'generally' be able to perform that activity."[22] Although not an exhaustive list, in evaluating whether the plaintiff's "general ability" to conduct the course of his or her normal life has been affected, a court may consider: "(a) the nature and extent of the impairment, (b) the type and length of treatment required, (c) the duration of the impairment, (d) the extent of any residual impairment, and (e) the prognosis for eventual recovery."[23] The focus, however, is not on the plaintiff's subjective pain and suffering, but on injuries that actually affect the functioning of the body.[24] For instance, "[s]elf-imposed restrictions," even if based on real

---

[18] *Id.*

[19] *Id.* at 131.

[20] *Id.* at 133.

[21] *Id.*

[22] *Id.* at 131.

[23] *Id.* at 133.

[24] *Miller, supra* at 249.

pain, are not sufficient to establish residual impairment; rather, the restrictions must be "physician-imposed."[25]

Beyond stating that "[s]ubjective complaints that are not medically documented are insufficient" to satisfy a showing of objective manifestation,[26] *Kreiner* does not define what *is* sufficient to meet that requirement. Therefore, the pertinent question is whether a plaintiff's injuries must be merely diagnosable by the plaintiff's subjective symptoms, i.e., medically identifiable, or whether the injuries must be capable of being evidenced by objective testing, i.e., medically measurable.

### C. OBJECTIVE MANIFESTATION

#### (1) *CASSIDY* AND *WILLIAMS*

In *Cassidy v McGovern*, the Michigan Supreme Court answered the question: "[W]hat does serious impairment of body function mean?"[27] After noting that, "[a]bsent specifics from the Legislature," the definition would have to develop on a case-by-case basis, the Court determined that "the phrase 'serious impairment of body function' . . . demonstrates the legislative intent to predicate recovery for noneconomic loss on *objectively manifested injuries*."[28] The Court explained that "[r]ecovery for pain and suffering is not predicated on serious pain and suffering, but on injuries that affect the functioning of the body."[29] The Court then concluded that the plaintiff's injuries fell within the classification "impairment of body function" because they "were not general aches and pains, but rather two broken

---

[25] *Kreiner, supra* at 133 n 17.

[26] *Id.* at 132.

[27] *Cassidy v McGovern*, 415 Mich 483, 494; 330 NW2d 22 (1982), overruled in part by *DiFranco, supra*.

[28] *Id.* at 503, 505 (emphasis added).

[29] *Id.*

bones."[30] According to *Cassidy*, "The Legislature clearly did not intend to erect two significant obstacles to a tort action for noneconomic loss and one quite insignificant obstacle."[31]

Referring to the *Cassidy* "objectively manifested" injury requirement, this Court, in *Williams v Payne*, pointed out that "[t]he *Cassidy* opinion did not expressly designate which standard of manifestation to employ, objective medical measurements of injury or a patient's complaints of pain substantiated only by the patient's limited activities."[32] The *Williams* panel then opined that "[m]edically unsubstantiated pain will always be present in a tort action for pain and suffering. The Legislature could not intend so low a threshold for avoiding the no-fault act's proscription against tort actions."[33] This Court also noted that "the *Cassidy* decision spoke of 'objectively manifested *injuries*', not symptoms."[34] The *Williams* panel therefore held that for an injury to be objectively manifested, it must be capable of "medical measurement."[35] Therefore, the *Williams* panel held that the plaintiffs' complaints of pain and "soft tissue injuries were not subject to medical measurement," and thus were "not 'objectively manifested' in a scientific or medical context."[36]

### (2) *DiFRANCO*

However, *DiFranco v Pickard* overruled *Williams* and *Cassidy*, at least in part. The Supreme Court expressly disagreed with the *Williams* requirement that

---

[30] *Id.*

[31] *Id.* at 503.

[32] *Williams, supra* at 410.

[33] *Id.*

[34] *Id.* (emphasis in original).

[35] *Id.* at 409.

[36] *Id.*

actionable injury be medically measurable.[37] The Court
explained that under the *Williams* decision, "an injury
which cannot be directly demonstrated through the use
of accepted medical tests or procedures, but must be
diagnosed on the basis of the plaintiff's subjective
complaints, a physician's clinical impressions, or the
symptoms resulting from the injury, is not objectively
manifested."[38] The Court then noted that the *Williams*
interpretation had led to divergent decisions by panels
of this Court and "proved to be an almost insurmount-
able obstacle to recovery of noneconomic damages in
soft tissue injury cases."[39] Thus, the Court concluded
that *Williams* misinterpreted *Cassidy*.[40] "Neither
*Cassidy* nor § 3135(1) limits recovery of noneconomic
damages to plaintiffs whose injuries can be seen or
felt."[41] Thus, the Court held, under MCL 500.3135(1)
and *Cassidy*, "[t]he 'serious impairment of body func-
tion' threshold requires the plaintiff to prove that his
noneconomic losses arose out of a medically identifiable
injury which seriously impaired a body function. The
*Cassidy* Court required no more than this."[42] Essen-
tially, by adopting this medically identifiable standard,
the *DiFranco* decision lowered the previous standard by
holding that a doctor's subjective diagnosis of an injury
was sufficient to meet the threshold test.

### (3) LEGISLATIVE ADOPTION OF "OBJECTIVELY MANIFESTED"; THE PARTIES' ARGUMENTS

Ten years after *DiFranco*, the Legislature enacted
MCL 500.3135(7), defining a "serious impairment of

---

[37] *DiFranco, supra* at 40, 73-74.

[38] *Id.* at 71.

[39] *Id.* at 72-73.

[40] *Id.* at 74.

[41] *Id.* at 74-75.

[42] *Id.* at 75; see also *id.* at 40.

body function" as requiring an *"objectively manifested* impairment of an important body function."[43] According to Bowman, with this amendment, the Legislature adopted the *Cassidy* language and effectively overruled *DiFranco*. Thus, Bowman argues, in keeping with *Cassidy* and its progeny, soft tissue injuries, like Netter's, do not constitute an "objectively manifested impairment of an important body function" because they are not medically measurable.[44] But Netter argues that the Legislature actually intended to implement the more lenient *DiFranco* medically identifiable standard. Netter points out the lack of further clarification from *Kreiner*, but asserts that the *Kreiner* decision clearly did not intend to use the medically measurable standard, noting the mere requirement for medical documentation. Thus, Netter argues, under *Kreiner*, if a qualified medical person is able to diagnose the injury or impairment, thereby identifying it, then the objective manifestation element is satisfied.

### (4) INTERPRETING THE STATUTE

"The overriding goal guiding judicial interpretation of statutes is to discover and give effect to legislative intent. The starting place for the search for intent is the language used in the statute."[45] Beyond that, the rules of statutory construction include the following:

---

[43] MCL 500.3135(7) (emphasis added); see 1995 PA 222, effective March 28, 1996.

[44] See *Page v Clark*, 142 Mich App 697, 700; 370 NW2d 15 (1985) ("whiplash" that healed in three months did not meet the threshold); *Flemings v Jenkins*, 138 Mich App 788, 790; 360 NW2d 298 (1984) ("The medical findings of muscle spasm, tenderness and limited flexion do not rise to the level of objective manifestations of injuries which generally support a finding of 'serious impairment of body function.' "); *Williams, supra.*

[45] *Bio-Magnetic Resonance, Inc v Dep't of Public Health*, 234 Mich App 225, 229; 593 NW2d 641 (1999) (citations omitted).

(1) when a statute is unambiguous, further construction is to be avoided; (2) if an ambiguity exists, the intent of the Legislature must be given effect; (3) a construction which best accomplishes the statute's purpose is favored; (4) statutes are to be interpreted as a whole and construed so as to give effect to each provision; (5) specific words in a statute are given their ordinary meaning unless a different interpretation is indicated; and (6) respectful consideration is to be given to the construction of a statute used by those charged with its application.[46]

The "objectively manifested" language was officially added to the no-fault act in 1996.[47] And both this Court and the Michigan Supreme Court have recognized that, by this enactment, the Legislature overturned *DiFranco* and codified the tort threshold injury standards of *Cassidy*.[48] Indeed, in *Miller v Purcell*, this Court recognized that "the Legislature's amendment of MCL 500.3135 reflected a *return to* the standard first articulated in *Cassidy v McGovern*," that " '[r]ecovery for pain and suffering is not predicated on serious pain and suffering, but on injuries that affect the functioning of the body.' "[49]

### (5) *JACKSON v NELSON*

As stated, the trial court in this case took particular exception to this Court's 2002 decision in *Jackson v Nelson*. According to the trial court here, *Jackson* thwarted the committee on model jury instruction's plans to amend SJI2d 36.11 and remove the *DiFranco*

---

[46] *Nicholas v Michigan State Employees Retirement Bd*, 144 Mich App 70, 74; 372 NW2d 685 (1985); see also MCL 8.3a.

[47] See 1995 PA 222, effective March 28, 1996.

[48] *Kreiner, supra* at 120, 121 n 8; *Miller, supra* at 248; *Kern, supra* at 338, 342.

[49] *Miller, supra* at 248-249, quoting *Cassidy, supra* at 505 (emphasis added).

language. However, while disagreeing with the *Jackson* panel's affirmance of the existing jury instruction, the trial court here opined that a reading of the *Jackson* opinion evidenced that the panel actually intended to employ the traditional interpretation of objective manifestation as medically measurable.

In *Jackson*, both parties requested that the trial court give the standard jury instruction found in SJI2d 36.11 that "[i]n order for an impairment to be objectively manifested, there must be a medically identifiable injury or condition that has a physical basis."[50] However, the *Jackson* trial court chose instead to give its own jury instruction, stating in pertinent part:

> An impairment is objectively manifested, which the law requires, if that impairment can be verified in some way besides the person who says they have the impairment telling you. It's not the injury which has to be objectively manifested; it's the impairment which has to be.
>
> But we're not talking about it has to show up on an x-ray or CAT scan, subject to palpation or sensation by a doctor, although any one of those things will make it an objective manifestation. As long as somebody else can satisfy themselves that the impairment is real by looking, seeing, whether it's a wince on a person's face or a slowness in their gait, the inability to do something, simply beyond them telling them, then it can be said to be objectively manifested.[51]

In response to the defendant's renewed request for the standard instruction, the *Jackson* trial court stated:

> Where in the statute does it say that? I know the instruction says it but not the statute, unless what's

---

[50] *Jackson, supra* at 644, 649.

[51] *Id.* at 645.

happened is everyone has jumped to the conclusion the statute reimplemented *Cassidy*, which it never did do at all, and is importing something in that the legislature isn't talking about. The impairment has to be objective, and you're saying the injury has to be so, too. If the legislature didn't say so, why should I?

\* \* \*

I frankly have defined serious impairment just as it is in the statute, giving to its words just their ordinary, dictionary definitions. To the extent the standard jury instruction requires a medically identifiable injury, I believe it is in plain error because that is not what the statute requires.

The objective component here must be of the impairment. Maybe the legislature misspoke, but I don't believe so and, even if I did, it would be judicial error to tell the legislature that they didn't get it right. It is the impairment which must be objectively manifested, nothing more.

\* \* \*

With regard to this medically identifiable injury, the standard jury instruction is, in my opinion, just plain wrong and, therefore, I'm not obligated to give it.[52]

The *Jackson* trial court's comments reveal its apparent confusion about the intended meaning of the "medically identifiable" standard. Under *DiFranco*, an injury satisfies the medically identifiable standard if the injury can "be diagnosed on the basis of the plaintiff's subjective complaints, a physician's clinical impressions, or the symptoms resulting from the injury . . . ."[53] Thus, although expressly rejecting the "medically identifiable" terminology, the *Jackson* trial court's comments—that an injury is objectively

---

[52] *Id.* at 645-646.

[53] *DiFranco, supra* at 71.

manifested if it can be identified by "a wince on a person's face or a slowness in their gait, the inability to do something, simply beyond them telling them" —indicate that it did essentially intend to employ the *DiFranco* medically identifiable standard.

Before considering the question whether the *Jackson* trial court erred in so instructing the jury, the *Jackson* panel delineated the history of the phrase "serious impairment of body function,"[54] as we have also done above. In doing so, the *Jackson* panel acknowledged that the Legislature's amendment of MCL 500.3135 reflected a return to the more restrictive *Cassidy* standard of objective manifestation.[55] However, the *Jackson* panel found it significant that the Legislature did not specifically indicate in the plain language of the statute that it was disclaiming *DiFranco*'s medically identifiable standard, of which the Legislature was presumed to be aware. That is, the *Jackson* panel explained, "The Legislature is presumed to have been aware that our Supreme Court in *DiFranco* construed the phrase 'objectively manifested' to require proof that the injury is medically identifiable."[56] Therefore, the *Jackson* panel held that SJI2d 36.11 was an accurate reflection of the law and that the trial court erred in its instructions to the jury.[57]

We note that, ironically, the *Jackson* trial court used a *less* restrictive standard than that contained in SJI2d 36.11, while the trial court here used a *more* restrictive standard than that contained in SJI2d 36.11. Despite this irony, this Court's ruling in

---

[54] *Jackson, supra* at 648-649.

[55] *Id.* at 649-650.

[56] *Id.* at 652.

[57] *Id.* at 653-654.

*Jackson* was clearly binding on the trial court here and is also clearly binding on this Court.[58] Thus, in light of *Jackson*, we are bound to follow the rule that, for an impairment to be objectively manifested, there must merely be a medically *identifiable* injury or condition that has a physical basis.[59] The trial court here was therefore in error when it substituted the medically *measurable* standard. But that is not the end of the inquiry. We must also analyze Netter's injuries in light of *Kreiner* and its progeny.

### (6) *KREINER* AND ITS PROGENY

As mentioned, in *Kreiner*, the Court stated that "[s]ubjective complaints that are not medically documented are insufficient" to meet the threshold injury requirement.[60] The Court did not expound on that requirement any further. But it is significant to note that in the underlying case of *Kreiner v Fischer*,[61] objective tests, including magnetic resonance imaging (MRI) and an electromyography (EMG), showed the degeneration in the plaintiff's discs and radiculopathy.[62] Indeed, the Court noted that "EMG testing is a process by which impairment to nerves in the arms and hands may be *verified objectively*. It involves measuring and analyzing the responses of muscles to stimulation by electricity."[63] It thus appears that *Kreiner* intended to

---

[58] MCR 7.215(J)(1).

[59] *Jackson, supra* at 653.

[60] *Kreiner, supra* at 132.

[61] *Kreiner* consolidated two cases: *Kreiner v Fischer (On Remand)*, 256 Mich App 680; 671 NW2d 95 (2003) and *Straub v Collette (On Remand)*, 258 Mich App 456; 670 NW2d 725 (2003).

[62] *Kreiner, supra* at 124 n 10, 136; *Kreiner v Fischer*, 251 Mich App 513, 518 n 4; 651 NW2d 433 (2002), rev'd *Kreiner, supra*.

[63] *Kreiner, supra* at 124 n 10 (emphasis added).

require the use of some sort of objective verification to evidence the injury. And the *Kreiner* progeny of published cases supports this conclusion.[64]

In *Williams v Medukas*, x-rays objectively manifested the plaintiff's injuries.[65] In *Moore v Cregeur*, objective medical evidence existed to show that the plaintiff suffered multiple injuries, including rib fractures, a collapsed lung, and detached retinas in her eyes.[66] And in *McDanield v Hemker*, the evidence, consisting of an MRI and x-rays, clearly established that the plaintiff suffered an objectively manifested impairment of an important body function.[67]

In light of *Kreiner* and its progeny, we conclude that the current meaning of "objectively manifested"— whether described as "medically measurable,"[68] "medically identifiable,"[69] or "medically documented"[70]— requires that a plaintiff's injury must be capable of objective verification by a qualified medical person either because the injury is visually apparent[71] or because it is capable of detection through the use of medical testing. This interpretation comports with the Legislature's intent that the "serious impairment of body function" requirement be as significant an

---

[64] We recognize that some unpublished cases have concluded that a plaintiff's injuries were objectively manifested simply because they were documented in a physician's records; however, these cases are neither binding precedent nor persuasive in this case.

[65] *Williams v Medukas*, 266 Mich App 505, 508; 702 NW2d 667 (2005).

[66] *Moore v Cregeur*, 266 Mich App 515, 519; 702 NW2d 648 (2005).

[67] *McDanield v Hemker*, 268 Mich App 269, 276-280; 707 NW2d 211 (2005).

[68] *Williams v Payne, supra.*

[69] *DiFranco, supra.*

[70] *Kreiner, supra.*

[71] See *Kreiner, supra* at 141-142 (CAVANAGH, J., dissenting) (relating dictionary definitions of "objective" and "manifest").

obstacle to recovery as that posed by the requirement of permanent serious disfigurement and death.[72]

### D. THE PRESENT ACTION

#### (1) THE EVIDENCE

The emergency medical service report prepared after the accident reveals that Netter denied any neck or back pain, and neither of the postaccident tests administered to Netter (x-ray in August 2004 and MRI in September 2004) revealed any measurable abnormalities. However, Netter's medical records reflect diagnoses of lumbar radiculopathy, along with cervical, dorsal, and trapezius myositis. Laren Lerner, D.O., began providing physical therapy to Netter in August 2004 for dorsal myositis, and his records indicate that Netter may have received an EMG test to confirm her diagnosis of trapezius myositis. In early November 2004, Gino Sessa, M.D., diagnosed Netter with a "cervical myofascial pain syndrome secondary to a cervical strain injury." Basically, Dr. Sessa concluded that Netter's injuries were merely soft-tissue in nature. By late November, Dr. Sessa found that Netter had reached her "maximum medical improvement and pre-injury status." Netter submitted a disability certificate that declared her disabled from housework, caring for her children, and caring for her own personal needs, dating back to the accident. But Dr. Lerner discharged Netter from physical therapy in December 2004 for noncompliance, noting that her prognosis was fair for meeting her expected goals.

#### (2) SERIOUS IMPAIRMENT OF BODY FUNCTION

There is no dispute that the movements of one's back and neck are important body functions.[73] But the trial

---

[72] *Cassidy, supra* at 503.

[73] See *Shaw v Martin*, 155 Mich App 89, 96; 399 NW2d 450 (1986); *Meklir v Bigham*, 147 Mich App 716, 720; 383 NW2d 95 (1985).

court here concluded that because Netter's soft-tissue injuries were not subject to precise medical measurement, they could not satisfy the threshold requirement of an objectively manifested injury. The trial court's conclusion was in error because the type of "soft-tissue" injuries that Netter suffered are capable of objective verification.[74] However, the record is unclear regarding the objective verification of Netter's injuries. Her x-rays and MRI showed no abnormalities, but Dr. Lerner's notes indicate that some of Netter's injuries may have been evidenced in an EMG. Thus, were it not for our conclusion that Netter's general ability to lead her normal life was not affected, we would remand this case for further findings on the objective nature of Netter's injuries.

(3) NETTER'S GENERAL ABILITY TO LEAD HER NORMAL LIFE

The trial court concluded that Netter's ability to lead her normal life was indeed impaired. We disagree. Although her July 2005 deposition testimony indicates that she was still suffering residual effects from the accident, the evidence submitted to the trial court demonstrates that she reached her "maximum medical improvement and pre-injury status" as of November 2004 and that she was discharged from physical therapy, and, by implication, any physician-imposed restrictions, by December 2004. We therefore conclude that Netter failed to show that the course or trajectory of her normal life was affected as a result of this relatively brief period (six months) of recuperation.

III. CONCLUSION

We affirm the trial court's order granting Bowman summary disposition. Despite our disagreement with

---

[74] See *Kreiner*, *supra* at 124 n 10, 136.

the trial court's conclusions that led it to that disposition, its disposition was nevertheless correct. And we will not reverse the lower court when it reaches the correct result, albeit for the wrong reason.[75]

Affirmed.

HOEKSTRA, J., concurred.

WILDER, J., (*concurring*). I join with the majority in determining that the trial court erred by concluding that Netter's injuries impaired her general ability to lead a normal life, and, therefore, I agree that summary disposition was correctly granted in favor of Bowman. Accordingly, I would not address the question whether Netter suffered a serious impairment of body function.

---

[75] *Tipton v William Beaumont Hosp*, 266 Mich App 27, 37-38; 697 NW2d 552 (2005).