*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ERIC STEVEN QUINT, LIP, by Guardian
AMANDA M. WILKINS,

       Plaintiff-Appellee,

and

ADVANCED SURGERY CENTER LLC,

       Intervening Plaintiff,

v

BELINDA TIBBITTS, Personal Representative of
the ESTATE OF MARTIN JAY TIBBITTS, and
THOMAS MAKUCH, also known as THOMAS
MACKUCK,

       Defendants-Appellants,

and

TRUMBULL INSURANCE COMPANY, also
known as HARTFORD INSURANCE COMPANY
OF THE MIDWEST,

       Defendant.

UNPUBLISHED
April 7, 2022

No. 357138
Wayne Circuit Court
LC No. 19-014815-NI

Before: GADOLA, P.J., and BORRELLO and M. J. KELLY, JJ.

PER CURIAM.

Defendants, the Estate of Martin Jay Tibbitts, by Personal Representative Belinda Tibbetts, and Thomas Makuch, also known as Thomas Mackuck, appeal by leave granted[1] the order denying their motion for summary disposition. We reverse and remand.

## I. FACTUAL BACKGROUND

On October 9, 2018, Makuch was driving a 1966 Austin Healy owned by Martin Jay Tibbitts,[2] and plaintiff Steven Quint, a legally incapacitated person, was riding in the front passenger seat. While driving, Makuch collided with a parked car and then struck a utility pole. Plaintiff suffered a laceration on his right wrist and complained of hip pain immediately after the accident. Plaintiff was transported to Ascension St. John Hospital, where he was diagnosed as having a nondisplaced stable horizontal left iliac fracture and a cut on his wrist.

Plaintiff filed a complaint against defendants, including defendant Trumbull Insurance Company ("Trumbull"), also known as Hartford Insurance Company of the Midwest, alleging negligence by Makuch, owner's liability under MCL 257.401, and negligent entrustment against Martin Jay Tibbits. Plaintiff also brought a claim against Trumbull for no-fault benefits. Defendants moved for summary disposition under MCR 2.116(C)(10), arguing there was no genuine issue of fact plaintiff had suffered a serious impairment of a body function or a permanent serious disfigurement as a result of the accident. None of plaintiff's injuries, argued defendants, rendered plaintiff unable to return to or maintain his normal life, which was essentially the same before and after the accident. The trial court dispensed with oral argument and issued a one-page form order denying summary disposition. Defendants moved for reconsideration, which was denied. Intervening plaintiff, Advanced Surgery Center, LLC, dismissed its claims against Trumbull and the parties stipulated to the dismissal of Trumbull from the litigation. A stay of proceedings was entered in the trial court on the filing of this appeal.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision to grant or deny summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A summary disposition motion filed under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Id*. at 160. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) when the evidence, viewed in the light most favorable to the nonmoving party, shows there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

---

[1] *Eric Steven Quint v Estate of Martin Jay Tibbits* [sic], unpublished order of the Court of Appeals, entered July 20, 2021 (Docket No. 357138).

[2] On September 16, 2020, the Estate of Martin Jay Tibbitts was substituted for Martin Jay Tibbitts.

### III. ABILITY TO LIVE NORMAL LIFE

Defendants argue the trial court erred because plaintiff is unable to establish that any impairments he experienced as a result of the accident affected his ability to live his normal life. We agree.

Michigan's no-fault insurance act, MCL 500.3101, *et seq.*,[3] "created a compulsory motor vehicle insurance program under which insureds may recover directly from their insurers, without regard to fault, for qualifying economic losses arising from motor vehicle incidents." *McCormick v Carrier*, 487 Mich 180, 189; 795 NW2d 517 (2010). Under MCL 500.3135, a party is liable for loss caused to another party if "his or her ownership, maintenance, or use of a motor vehicle" has caused that party to experience "death, serious impairment of a body function, or permanent serious disfigurement." MCL 500.3135(1). MCL 500.3135(5) defines a "serious impairment of body function" as an "objectively manifested" impairment of an "important body function" that affects the person's "general ability to lead his or her normal life." MCL 500.3135(5)(a) through (c). In other words, it is "an impairment that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *McCormick*, 487 Mich at 196.

Our Supreme Court has laid out a three-pronged test for establishing a serious impairment of a body function: (1) an objectively manifested impairment (2) of an important body function (3) that affects the person's general ability to lead his or her normal life. *Id*. at 215. Whether a person has suffered serious impairment of a body function is a question of law for the court "only if (1) 'there is no factual dispute concerning the nature and extent of the person's injuries' or (2) 'there is a factual dispute concerning the nature and extent of the person's injuries' " that is not material to the determination of whether the person has suffered a serious impairment of a body function. *Patrick v Turkelson*, 322 Mich App 595, 607-608; 913 NW2d 369 (2018), quoting MCL 500.3135(2)(a).

Defendants' first issue deals with the third *McCormick* prong: whether the alleged impairment has affected plaintiff's ability to lead his normal life. Whether plaintiff's ability to live a normal life has been affected "requires a comparison of [the plaintiff's] life before and after the incident." *McCormick*, 487 Mich at 202. A comparison of plaintiff's life before and after the accident in this case shows there is no appreciable difference in plaintiff's pre- and post-accident ability to lead his normal life. All of plaintiff's physical limitations and health conditions remained the same before and after the accident. For instance, plaintiff's obesity, back pain, COPD, and headaches existed before, and continued after the accident, as did his drug and alcohol use and smoking. Plaintiff's back pain caused him to use a cane after the accident, but he admitted at deposition to having such pain for years and had started using the cane over 10 years ago. While plaintiff did not work after the accident, he had not worked for years before the accident, receiving Social Security disability benefits. His normal life consisted mainly of driving, either to estate sales or taking his girlfriend to buy heroin. He returned to living with his girlfriend and driving

---

[3] The Michigan Legislature amended the no-fault insurance act on June 11, 2019. 2019 PA 21. However, the parties do not dispute the preamendment version of the no-fault act applies in this case.

her after the accident, just as he had previously. Plaintiff's claims are also contradicted by the Lakeland Rehabilitation Center's discharge examination, which showed plaintiff was able to independently dress, walk, eat, bathe, and care for his personal hygiene following the accident. In sum, a comparison of plaintiff's life before and after the October 2018 accident shows that the accident did not affect his ability to live his normal life.

This conclusion is not surprising given plaintiff's injuries. Plaintiff was diagnosed as having a nondisplaced stable horizontal left iliac fracture and a cut on his wrist and was treated for both conditions. No other injuries were identified. While plaintiff experienced withdrawal symptoms while in the hospital after the accident, these symptoms are not attributable to the accident but rather plaintiff's alcohol and drug consumption. Plaintiff's photographs of his arms and face show barely visible marks on his wrist and head. As noted by John F. O'Leary, Ph.D., ABPP, and Brian Kirschner, M.D., any adverse effects on plaintiff's life are because of a later car accident, occurring on April 26, 2019, and plaintiff's July 27, 2019 drug overdose, not from the October 2018 accident. Any injuries from the October 2018 accident were "mild" at best.

Plaintiff points to the evaluation by Richard Weiss, Ph.D., L.P.C., who stated that plaintiff's "deficits [we]re most significantly related to the October 2018 motor vehicle accident and the incident in which he overdosed in August 2019," as evidence for his position. Plaintiff misconstrues Dr. Weiss' statement. Dr. Weiss attributes plaintiff's deficits to *both* the October 2018 accident and the July 2019 overdose. This evidence alone does not establish the October 2018 accident caused plaintiff to be unable to live his normal life, particularly given the other evaluations, which attributed plaintiff's deficits to the April 2019 accident and the July 2019 overdose, and the evidence demonstrating a lack of any change in plaintiff's lifestyle or abilities.

Michigan caselaw supports the conclusion that the alleged impairments did not affect plaintiff's ability to lead his normal life. In *McDanield v Hemker*, 268 Mich App 269; 707 NW2d 211 (2005), where the plaintiff lost the ability to do nearly all work and recreational activities as a result of an accident, we noted that comparing the plaintiff's "life before and after the accident is [like] . . . comparing day to night." *Id*. at 281. In contrast, a comparison of plaintiff's life before and after the October 2018 accident shows the same behaviors and limitations. Plaintiff has shown no appreciable difference in his ability to continue his preaccident activities.

In conclusion, plaintiff is unable to establish that the alleged impairments he experienced as a result of the accident affected his ability to live his normal life. The trial court therefore erred in denying summary disposition, despite plaintiff's preaccident lifestyle remaining unchanged after the accident.

## IV. PERMANENT SERIOUS DISFIGUREMENT

Defendants argue the trial court erred because plaintiff is unable to show any permanent serious disfigurement as a result of the accident. We agree.

Under MCL 500.3135(1), a party is liable for loss caused to another party if "his or her ownership, maintenance, or use of a motor vehicle" has caused that party to experience "death, serious impairment of a body function, or permanent serious disfigurement." A disfigurement

must be "both permanent and serious." *Fisher v Blankenship*, 286 Mich App 54, 66; 777 NW2d 469 (2009). Furthermore,

> [W]hether an injury constitutes a serious disfigurement must be determined with regard to the injured person's appearance while engaged in a "full spectrum" of life activities rather than in an isolated "perusal" of the injured person's immediate appearance. Consequently, when determining whether a plaintiff has established a threshold disfigurement, courts must objectively examine the physical characteristics of the injury on a case-by-case basis and determine whether, in light of common knowledge and experience and considering the full spectrum of the injured person's life activities, the injury's physical characteristics significantly mar or deform the injured person's overall appearance. [*Id*. at 67 (internal citation omitted).]

Plaintiff did not suffer a permanent serious disfigurement. The photographs of plaintiff show barely discernible marks on his wrist and forehead. Indeed, any alleged scarring is almost indistinguishable from plaintiff's skin. We have found that a scar, which is "not immediately and readily noticeable," such that those who know plaintiff "would not 'really notice' the scar," does not constitute a permanent serious disfigurement. *Kanaziz v Rounds*, 153 Mich App 180, 187; 395 NW2d 278 (1986).

Plaintiff's position is also undermined by his own testimony, which is contradictory at multiple points. Plaintiff maintains he experienced scarring as a result of the accident, yet he also testified at deposition that he did not know whether he sustained any cuts or abrasions during the accident. He also acknowledged that any cuts he may have received could have healed. In short, his testimony is contradictory and undermines his position on this issue.

A consideration of the "full spectrum" of plaintiff's life, not just his physical appearance, also supports the conclusion plaintiff did not suffer a permanent serious disfigurement. *Fisher*, 286 Mich App at 67. As noted, there is no substantive difference between plaintiff's life before the accident and after the accident. He continued to have the same health ailments, returned to his previous home and relationship, and continued driving. There is no evidence of the almost indiscernible marks on his wrist and head causing him to experience any additional hardship, nor is there evidence his appearance was significantly different before the accident.

For these reasons, plaintiff did not suffer a permanent serious disfigurement. The trial court therefore erred when it denied summary disposition regarding plaintiff's claim that he sustained a permanent serious disfigurement.

## V. NEGLIGENT ENTRUSTMENT

Defendants argue the trial court erred because there is no evidence Makuch was an incompetent driver and, therefore, no basis for alleging negligent entrustment. We agree.

To show negligent entrustment, a plaintiff must prove:

> [T]he motor vehicle was driven with the permission and authority of the owner; that the entrustee was in fact an *incompetent* driver; and that the owner knew at the

time of the entrustment that the entrustee was incompetent or unqualified to operate the vehicle, or had knowledge of such facts and circumstances as would imply knowledge on the part of the owner of such incompetency. [*Hendershott v Rhein*, 61 Mich App 83, 89; 232 NW2d 312 (1975) (quotation marks and citation omitted) (emphasis added).]

"To establish negligent entrustment, a plaintiff need show only simple negligence in the entrustment and in the behavior which caused the activity." *Id*. at 89-90.

The trial court erred in denying summary disposition because the elements of negligent entrustment are not established. First, there is no evidence Makuch was an "incompetent" driver. According to the traffic crash report, Makuch "dropped his phone" and was trying to "retrieve it from the floor of the vehicle which caused him to veer from the second lane and strike the parked vehicle . . . ." While Makuch should not have been trying to retrieve his phone while driving, this fact alone does not establish that Makuch is an incompetent driver. And plaintiff provides us with no evidence of Makuch's alleged incompetence other than the fact that the accident occurred.

Second, even if Makuch were deemed to be an incompetent driver, there is no evidence that Tibbits, the owner of the vehicle, knew Makuch was "incompetent or unqualified to operate the vehicle." *Id*. at 89 (quotation marks and citation omitted). In the alternative, plaintiff cannot establish that Tibbitts "had knowledge of such facts and circumstances as would imply knowledge on the part of the owner of such incompetency." *Id*. (Quotation marks and citation omitted). There is no evidence of any such facts and circumstances, and plaintiff has provided us with no reasoning or argument to suggest any pre-accident knowledge of Makuch's alleged incompetency. Plaintiff asserts the "exotic" nature of the Austin Healy should have alerted Tibbitts to the likelihood of an accident due to Makuch's incompetency, but this claim is completely unfounded. It is entirely unclear how the nature of the vehicle could, or should, have led to the knowledge that Makuch was incompetent to drive.

In sum, there is no evidence Makuch was an "incompetent" driver, nor is there evidence Martin Jay Tibbitts knew, or should have known, Makuch was an incompetent driver, such that an accident was foreseeable. Therefore, the trial court erred in denying summary disposition regarding plaintiff's negligent entrustment claim.

VI. CONCLUSION

Reversed and remanded. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Michael J. Kelly

-6-